the testator and not of the life tenant. But in the case at bar the will explicitly provides that the devise and bequest to his children are after the death of the wife.

In Patchen v. Patchen et al., 121 N. Y. 432, 24 N. E. 695, the headnote is as follows:

"P. died leaving a widow and five children. By his will he devised to his widow an undivided one-third part of his real estate for life; upon her death the same to go to his children 'equally who may then be living and to their heirs and assigns forever.' The other two-thirds he devised to his five children in equal shares. Two of the children survived the widow, and one of the deceased children left children who also survived her. In an action for the construction of the will, held, that the two surviving children of the testator took the whole of the one-third devised to their mother for life."

It seems to me difficult to distinguish on principle the question decided in that case from the question presented by the case at bar.

The learned court below has discussed very fully, and, as we think, ably, the authorities bearing upon this very interesting and important question. We agree in the conclusions reached by him, and it therefore follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs. All concur; ROBSON, J., in result only.

In re KAUPPER.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

1. HUSBAND AND WIFE (§ 14*)—JOINT TENANCY—PERSONALTY.
   A joint tenancy may be created in personalty if the parties so intend, though they be husband and wife.
   [Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 14.*]

2. HUSBAND AND WIFE (§ 14*)—JOINT TENANCY—PERSONALTY—SURVIVORSHIP.
   The right of survivorship exists in case of a joint tenancy of husband and wife in personal property.
   [Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 75; Dec. Dig. § 14.*]

3. JOINT TENANCY (§ 3*)—CREATION—INTENT—PRESUMPTION.
   Where there is no direct evidence of intent with reference to the joint ownership of property, presumptions are admissible.
   [Ed. Note.—For other cases, see Joint Tenancy, Dec. Dig. § 3.*]

4. JOINT TENANCY (§ 3*)—CREATION—INTENT—PRESUMPTION.
   While, where property sold was owned as tenants in common by the grantors before the sale, it might be presumed in the absence of other evidence that the bond and purchase-money mortgage taken at the sale were intended to be held in the same way, such presumption cannot prevail where the parties stated at the time their intention to create a joint tenancy with right of survivorship in such security.
   [Ed. Note.—For other cases, see Joint Tenancy, Cent. Dig. § 1; Dec. Dig. § 3.*]

5. JOINT TENANCY (§ 3*)—CREATION—DECLARATION IN WRITING—NECESSITY—STATUTES.
   Even though Real Property Law (Laws 1896, c. 547) § 56, making every estate granted or devised to two or more a tenancy in common unless ex-

pressly declared to be in joint tenancy be applicable to estates in personalty with reference to the nature of the tenure, it is not necessary that the parties declare in writing that they intend to hold in joint tenancy, but their intention may be shown by oral declaration.

[Ed. Note.—For other cases, see Joint Tenancy, Dec. Dig. § 3.*]

6. TRUSTS (§ 43*)—TRUST IN PERSONALTY—WRITTEN DECLARATION—NECESSITY.
A trust in personalty may be shown by the circumstances attending its creation, and need not be expressly declared in writing.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 62–65; Dec. Dig. § 43.*]

7. MORTGAGES (§ 137*)—INTEREST OF MORTGAGEE—NATURE.
Under the Revised Statutes a mortgagee has no title to the mortgaged property, but simply a chose in action, held as collateral security for the payment of the debt, and hence his right is personal property.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 270–276; Dec. Dig. § 137.*]

8. HUSBAND AND WIFE (§ 14*)—ESTATES—CREATION—SUFFICIENCY OF EVIDENCE.
Evidence *held* to sustain a finding that a husband intended that his wife should take bank accounts and a bond and purchase-money mortgage by survivorship, and hence that they held in joint tenancy.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 75; Dec. Dig. § 14.*]

Thomas, J., dissenting.

Appeal from Surrogate's Court, Kings County.

In the matter of the judicial settlement of the account of Catharina Kaupper, as administratrix of Lorenz Kaupper, deceased. From a decree overruling objections to the account of the administratrix, Mary Klingenberg and another appeal. Affirmed.

Argued before HIRSCHBERG, P. J., and WOODWARD, JENKS, BURR, and THOMAS, JJ.

Charles Coleman Miller, for appellants.
Adolph Kiendl (James E. Smyth, on the brief), for respondent.

BURR, J. In 1892 one Lorenz Kaupper purchased a farm, taking title in his own name. In October of the same year he conveyed to his wife, Catharina Kaupper, an undivided one-half part thereof, and on the same day she executed and delivered to him a release of her dower. Without determining the legal effect of this release, I think it is apparent that the intent of the parties was to create a tenancy in common in the land. In 1907 Kaupper and his wife conveyed the farm to Abraham Balinka, and took back a bond of the said Balinka, payable to Lorenz Kaupper and Catharine Kaupper, his wife, their executors, administrators, or assigns. This bond was secured by a purchase-money mortgage upon the premises.

It appears from the testimony of the attorney who represented the parties at the time of the sale that a discussion arose respecting the person in whose name the mortgage should be taken. He testified:

"Mrs. Kaupper wanted the title to the mortgage. She asked to have the title put in her name, and there was some talk about it on account of the age of the old man. He was a very old man. The old man said that he wanted it in both names so that one would receive it in case of the death of the other; that he might die leaving her. I think he said he expected not to outlive her because he was about ten years older than she was."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

This testimony was absolutely uncontradicted, and was confirmed by that of two other witnesses. One of them testified that the old man said that, "in case he died, she was to get it, and in case she died he would get it," and that Mrs. Kaupper expressed herself as being satisfied with this. On September 25, 1906, an account was opened in the East New York Savings Bank, entitled "East New York Savings Bank to Lorenz or Catharine Kaupper," and on the 11th of February, 1907, another account was opened in the same bank, entitled "East New York Savings Bank to Catharina or Lorenz Kaupper." There is no evidence to whom the money belonged that was thus deposited. The teller of the bank testified that Kaupper and his wife came to the bank together, and at the time of opening the accounts stated that "they wished to open an account in both names, and in case of the death of either one the survivor to draw the balance of the money." This testimony also is uncontradicted. Lorenz Kaupper died July 6, 1908. At the time of his death the entire principal sum of the bond and mortgage was unpaid, and there was to the credit of one of the savings bank accounts the sum of $3,104.06, and to the credit of the other the sum of $3,108.60. Letters of administration upon Lorenz Kaupper's estate were issued to his wife on July 29, 1908. Subsequently a will was discovered, executed by him on February 18, 1895, which was proved March 22, 1909. This will contained no provision for his wife except the following:

"Fifth.—To my wife, Catharine Kaupper I bequeath the sum of one dollar, she having previously received from me a conveyance of certain lands in lieu of her dower."

Subsequently to the probate of the will these proceedings were started, requiring the said Catharina Kaupper, as administratrix, to account to the executors named in said will, who had duly qualified. She filed such account, and objections were filed upon the ground that she had not charged herself with one-half of the said bond and mortgage and one-half of the savings bank accounts. She claimed to be the owner of the whole thereof as survivor of her husband. The objections were overruled, and the Surrogate's Court in Kings county made its decree, holding in effect that as such survivor she did become absolute owner of the whole of the said property. Pending this appeal, Catharina Kaupper died, and the proceedings were continued in the name of her administratrix.

I think that the surrogate's decree should be affirmed. Conceding that the law does not recognize such a thing as tenancy by the entirety in personal property (Matter of Albrecht, 136 N. Y. 91, 94, 32 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700), it still does recognize a joint tenancy in personal property, which may be created if the parties so intend, irrespective of whether the tenants be husband and wife, and in such case the right of survivorship does exist. West v. McCullough, 123 App. Div. 846, 108 N. Y. Supp. 493, affirmed 194 N. Y. 518, 87 N. E. 1130. In the absence of direct evidence as to the intent, the law deals with presumptions. It has been held that if the husband and wife each contribute to a joint investment, or to the purchase of a security, and the title is taken in their joint names, to be held by them, their ex-

ecutors, administrators, or assigns, no presumption arises from the nature of the act that either intended to make a gift of his or her share to the survivor, and they would hold the same as tenants in common. Matter of Albrecht, supra. On the other hand, where a husband purchases with his own funds personal property, taking the title thereto in the joint name of himself and his wife, or makes a deposit in the savings bank of his own funds in their joint names, in the absence of other evidence, the presumption will be that he intended to confer upon his wife the right of survivorship. West v. McCullough, supra; Platt v. Grubb, 41 Hun, 447; McElroy v. Albany Savings Bank, 8 App. Div. 46, 40 N. Y. Supp. 422; McElroy v. Nat. Savings Bank, 8 App. Div. 192, 40 N. Y. Supp. 340; Matter of Meehan, 59 App. Div. 156, 69 N. Y. Supp. 9. Where it does not appear to whom the money belonged when it was placed in the bank, or who placed it there, although the bank book may be in the joint name of husband and wife, in the absence of other evidence of intent, the presumption will obtain that each had an equal interest therein. Wetherow v. Lord, 41 App. Div. 413, 58 N. Y. Supp. 778. In view of the fact that the real property, which was sold at the time that the bond and purchase-money mortgage were taken, was held under circumstances which would justify a conclusion that the husband and wife owned it as tenants in common, in the absence of other evidence, it might be presumed that it was the intent that the securities should be held in the same way. But this presumption cannot prevail if there is uncontradicted testimony of disinterested witnesses as to declarations by both parties, each in the presence of the other, made at the time that the bond and mortgage were executed, that the intent was to create a joint tenancy with a right of survivorship. The same rule would apply to the savings bank accounts. Although this evidence was received without objection, the contention is made that, because of the statute relative to estates in land, the learned surrogate erred in holding that any right of survivorship existed. If I understand the argument correctly, it is this: The statute relating to real property declares:

"Every estate granted or devised to two or more persons in their own right, shall be a tenancy in common, unless expressly declared to be in joint tenancy." Real Property Law (Laws 1896, c. 547) § 56.

"The rules governing estates or interests in lands, whether founded upon statutes or upon general principles of law, should, as far as practicable, be applied to estates or interests of a like character in personal property." Mills v. Husson, 140 N. Y. 99, 35 N. E. 422; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945.

The express declaration referred to in the statute must be contained in the writing under which the parties derived their rights to the property in question, or in an associated writing. In the absence of such express declaration, parol evidence as to intent, even though received without objection, would be ineffective as against the requirement of the statute.

This contention seems to me to be unfounded. The statute by its terms is limited to real property. So far as the nature of the tenure of an estate in personal property is concerned, it may be conceded that the statutory rule here expressed is applicable also to personal prop-

erty. Mills v. Husson, supra. It may be that in the case of real property the statutory presumption that grantees hold as tenants in common "is only removed by an express declaration that they take as joint tenants, or by words from which it clearly appears that there is an intention to create a joint tenancy," and that "this intention can only be gathered from the expression used in the devise" (or grant), "and must be a necessary implication from it." Gage v. Gage, 43 Hun, 501, affirmed 112 N. Y. 667, 20 N. E. 414; Jooss v. Fey, 129 N. Y. 17, 29 N. E. 136; Miner v. Brown, 133 N. Y. 308, 31 N. E. 24. But, in the case of real property, "an estate or interest" therein, "other than a lease for a term not exceeding one year, or any trust or power, over or concerning real property, or in any manner relating thereto, cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same, or by his lawful agents, thereunto authorized by writing." Real Property Law (Laws 1896, c. 547) § 207. So the statute of wills makes necessary (with an exception not here important to be noticed) a written instrument subscribed and attested with certain formalities. 2 Rev. St. tit. 6, c. 1, § 40. But in the case of personal property no instrument in writing is necessary to transfer the title thereto or to create an estate therein, and it would seem unreasonable to insist that, although the title might be transferred and the estate created by parol, evidence as to the character of that estate, and that it was a joint tenancy and not a tenancy in common, must be reduced to writing. Suppose that a husband and wife desire to purchase a horse, taking title thereto in the names of both. Payment of the purchase money and delivery of possession would transfer such title without any written instrument. It may be conceded that in the absence of evidence of a contrary intent, if each contributed one-half of the purchase price, they would own the horse as tenants in common. Can it be possible that if they desired to own it as joint tenants, with a right of survivorship, their express declaration of this could not be established by satisfactory parol evidence, but must be reduced to writing? Although to create a valid trust in real property, other than one by operation of law, a writing is necessary, so far as personal property is concerned, it is not necessary that there should be an explicit declaration of trust in writing. If the evidence of attending circumstances discloses that a trust has been created, and its purpose and object, it is sufficient. Devoe v. Lutz, 133 App. Div. 356, 117 N. Y. Supp. 339; Beaver v. Beaver, 117 N. Y. 421, 22 N. E. 940, 6 L. R. A. 403, 15 Am. St. Rep. 531; Young v. Young, 80 N. Y. 422, 36 Am. Rep. 634; Martin v. Funk, 75 N. Y. 134, 31 Am. Rep. 446. Why should it be necessary in the case of a purchase of personal property to declare in writing the nature of the tenure thereof? The rule by analogy referred to by Judge O'Brien in Mills v. Husson, supra, is only "as far as practicable."

So far as the character of the property is concerned, there is no difference between the savings bank accounts and the bond and mortgage. "Since the adoption of the Revised Statutes it has been the law of this state that a mortgagee acquires no title to the mortgaged property, that

the mortgage is simply a chose in action, held as collateral security for the payment of a debt, and until foreclosure the mortgagor has the entire fee subject to the lien of the mortgage. Here the bond is the principal obligation, and the rights of the joint creditors as between themselves upon the collection of the debt are not affected by the existence of the mortgage as collateral security for its payment." Matter of Albrecht, supra. The fact that at the time Lorenz Kaupper made his will in 1895, 12 years before the making of the bond and mortgage and 11 years before the opening of the savings bank accounts, he left his wife nothing by that instrument, stating as his reason therefor that he had already conveyed to her certain lands in lieu of dower, does not necessarily conflict with his subsequent expressed declaration of intention that as to both the bond and the mortgage and the savings bank accounts she should become the sole owner thereof if she survived him. In the long period of time which had elapsed there was ample opportunity for him to change his mind as to the extent in which she should participate in his property, and she does not claim these under his will. At the most, it can only be said that this was a circumstance bearing upon the question of intent. The preponderance of evidence that he intended that his wife should take both the bond and mortgage and the savings bank accounts as survivor is so overwhelming that the surrogate would not have been justified in finding otherwise.

The decree of the Surrogate's Court of Kings county should be affirmed, with costs.

HIRSCHBERG, P. J., and WOODWARD and JENKS, JJ., concur.

THOMAS, J. (dissenting). Husband and wife as tenants in common owned land, which they sold, receiving therefor a bond and mortgage payable to them. They took and held the securities as tenants in common by virtue of section 56, Real Property Law, undoubtedly applicable to personal property. Mills v. Husson, 140 N. Y. 99, 104, 35 N. E. 422; Matter of Kimberly, 150 N. Y. 90, 44 N. E. 945. But it is urged that the quality of the estate created by the instruments was changed by contemporaneous parol agreement from a distinct ownership in the property to a joint ownership, that is, that one tenant in common by the evidence of by-listeners has legally shown that, when the instruments payable to the two as tenants in common were delivered, the parties agreed that the instruments should convey property interests to be jointly owned during the life of both and then accruing in ownership to the survivor. So writings promising to pay to two persons holding by distinct titles and between whom the only unity is that of possession (3 Washburn, p. 685) become writings payable to the two jointly, and so to the survivor. In this way the statute is set at naught, and an estate not favored by our law arises in derogation of the written instrument, although the statute declares that this shall not happen unless there is an express declaration. This means "expressly declared" by the instrument itself, or some paper properly read in connection with it. In the case of a writing it cannot intend antecedent or contemporaneous parol declarations made by the parties that the interests trans-

ferred shall be in the nature of a joint tenancy, nor by similar declaration made by the two. This is said because the statute is defining the quality of an estate "granted or devised," and must have reference in time to its inception and whatever instrument creates it. The mortgagor in effect says:

"I for security pledge my land to A. and B. and empower them to convey or to cause the title to be conveyed according to law upon breach of the condition."

Now, the bystander says, after one holder has died, that when that was done A. said B. expressing herself as satisfied, or A. and B. expressly declared, "We will not have this instrument do what it purports —that is, give each by distinct title a share in the enjoyment—but will diminish the ownership of the one first dying to a life estate and enlarge that of the survivor to ownership in severalty, with common enjoyment for their joint lives"; and this court is asked to hold that such conversation or declaration changed the instruments accordingly. So every mortgage to two or more by parol may be proven to run to the survivor. Any will giving a legacy to two or more may be changed by parol from a tenancy in common to something different in ownership. So words spoken fritter away words solemnly written and carrying a meaning declared by the statute, and the recollections of hearers, by chance or otherwise, dissipate property interests vested by a writing. It cannot be too carefully observed that this is not a question of a person by parol giving or selling his property. A person may place his property in a bank and say: "This is in trust for A. and B., and, if the depositor die leaving the trust unrevoked and the property unconsumed by himself, B. may take it." But, if he deposit the money and declare in writing that it is in trust for A. and B., A.'s witnesses after B.'s death shall not be heard to say that A. and B. stipulated that the legal effect of the trust was at its inception so changed as to give the estate for their joint enjoyment for their joint lives, and that the survivor should take the whole. The question under primary consideration is not how one person owning personal property can transfer it to another, nor whether chattels can be sold by parol and delivered, nor whether a man and wife, having purchased a horse as tenants in common, can by parol create a joint estate in it, but whether a written instrument that gives A. distinct title to an interest in personal property and B. a similar distinct title in interest may itself be changed by parol so as to give an entirely different interest by a joint title. If notes or bonds be made payable to A. or B., or stock be transferred to A. and B., can B. show that the property interest was carried by this instrument to the survivor because the payees or the transferees at the time of taking the securities said one to another that such should be the case? No instrument relating to personal property could under such a rule escape destruction of its inherent quality, force, meaning, and intention. Could A., at the time of the execution of the instrument and independently thereof, give or sell his interest to B.? He could. That is quite another proposition, and, if that be the claim, it should be clearly proffered and receive separate consideration. But the first question is whether the quality of an

estate in personal property particularized by the instrument can be changed at its vesting to a different quality by evidence of parol declarations of the tenants, so that the instrument creates a joint tenancy rather than a tenancy in common. The fact that the owners were husband and wife does not aid the contention. Where there is an instrument carrying interests to husband and wife, and the wife has no property interest otherwise, the courts have held that it must have been the intention to create a joint tenancy, and this is to account for the wife's presence as a party to the instrument. But if the wife is a part owner in her own right, no occasion for such interpretation arises, and so it was held in the Albrecht Case, 136 N. Y. 91, 32 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700. But either party could give his interest to the other, not by changing the legal effect of the instrument that carried the property interest to the two as tenants in common, but by recognizing that each held as a tenant in common and by making a new and distinct arrangement whereby one gives in whole or in part, absolutely or conditionally, whatever he owns to the other. But is there evidence in the case at bar that the husband made an independent valid gift to his wife, or that the wife made such gift to the husband; that is, that each made a valid gift that his or her interest at death should become the property of the survivor? Was it a gift inter vivos? Every element of such gift is wanting. It neither went into effect at once nor was there any delivery of the subject of the gift. Such elements are negatived by the essential terms of the alleged agreement that each party should keep his interest in enjoyment until one died. Was it a gift causa mortis? Here the difficulty of delivery to the donee at once arises. But, passing that, there is no pretense that the gift was made in reasonable belief, nor in anticipation of the view of approaching death. So the theory of a gift may be disregarded. Was there a contract by which they agreed that there should be a joint tenancy; that is, that each sold to the other one undivided half interest in the property conditioned upon survivorship? There is some evidence that, before the instruments were drawn, the husband stated that he wanted the instrument drawn to both of them, and that he wished the survivor to have the property, and that the wife expressed herself as being satisfied. Then the instruments were drawn in such a way as to negative such conversation, and to give to the husband and wife each an estate of an entirely different quality. The husband said, with the wife's assent, that he wanted it in both names, so that one would receive it in case of the death of the other, and then and there an expert and honorable lawyer drew it so that by the terms of the instrument one would not receive it in the case of the death of the other. But it is said that a parol declaration made before the execution of the instrument is the express declaration of joint tenancy contemplated by the statute. That is, one of two persons acquiring separate interests in the same thing may lose it to the other by evidence of an antecedent conversation by parol that disputes the instrument. Such conversation, if it be regarded as an agreement, carries one person's title in personal property to another, conditioned upon the vendee being the survivor. Now, if we look for a consideration for such a contract,

there is none except the mutual promises, but there is no payment and no delivery and no writing, except a writing that raises the presumption that no such property interest exists as that claimed through the parol agreement. So I find no principle of law permits one tenant in common of property to tender evidence that an instrument that the law says carries distinct title to each of the two persons, with a common possession, did no such thing, but carried joint title and common enjoyment to both living and to the survivor, or that a gift or sale was made by each to the other conditioned upon survivorship and taking effect at the death of one of them. Hence this judgment should be modified so as to vest the title to the husband's one-half interest in his executor, and, as so modified, affirmed, without costs.