to earn revenue. The fact that millions of dollars are being spent to build and equip a road proves that in its present condition its tangible as well as intangible property has a value. The record does not disclose anything showing that the Tax Board acted upon a wrong basis, or assessed the relator's property at more than its actual value.

Apparently the Pennsylvania tunnel cost much more per mile and is assessed at a lower rate per mile. But it is not a like property. It is built to accommodate and furnish a terminal in New York City for the Pennsylvania Railroad Company's system of several thousand miles of railroad, and in its operation will become substantially a part of that system. The record does not disclose that it is, or is intended to be, in itself a distinct revenue producer. It does not appear that each person riding upon it will pay a fare for that privilege, or whether the Pennsylvania Railroad Company will charge a greater fare to and from New York City than before. The only real value of the terminal may be as an additional convenience to the public and to the Pennsylvania Railroad system, and an advertisement and an indirect benefit to the system of which it is a part. The tangible part of its franchise cost more, but the value of a special franchise depends upon the cost and the uses to which the property is to be put. The relator's business is a separate business, intended as a distinct revenue earner by itself, and its probable revenue and earnings can be more easily estimated.

The other properties, the cost and assessment of which were shown upon the hearing, are not of a like nature in themselves or in their business, and a fair comparison cannot be drawn between them. The fact that the relator has a grant from the state of a right of way under the waters of the Hudson river for operating a railroad does not relieve it from this tax. It appears that the relator was assessed the amount which the Tax Board deemed the full value of its franchise, and that other real property in New York City is assessed only 89 per cent. of value. The relator's property, therefore, should be reduced accordingly, so that it will stand on an equality with the other property.

The order of the Special Term should therefore be reversed upon the law and the facts, and the determination of the Tax Board should be modified by reducing the valuation as indicated, and, as so modified, confirmed, without costs to either party. All concur, except SMITH, P. J., dissenting.

In re NILES et al.

(Supreme Court, Appellate Division, Third Department.    January 4, 1911.)

1. EXECUTORS AND ADMINISTRATORS (§ 117*)—CONVERSION.

An administratrix cannot be charged, on the ground of conversion, with the proceeds of a bond and mortgage, by their terms not yet payable.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 469–471; Dec. Dig. § 117.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

. 2. HUSBAND AND WIFE (§ 14*)—MORTGAGE TO HUSBAND AND WIFE—WIFE'S RIGHT OF SURVIVORSHIP.

An assignment to deceased and his wife of a bond and mortgage, having taken the place of an original mortgage to them, the entire consideration for which was furnished by the husband, the wife, on his death, succeeds to the entire interest therein.

[Ed. Note.—For other cases, see Husband and Wife, Dec. Dig. § 14.*]

· 3. EXECUTORS AND ADMINISTRATORS (§ 117*)—CONVERSION.

An administratrix, by merely asserting ownership to notes rightfully in her possession, though her claim be erroneous, is not liable as for a conversion.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 469–471; Dec. Dig. § 117.*]

- 4. EXECUTORS AND ADMINISTRATORS (§ 507*)—CLAIMS TO INDIVIDUAL OWNERSHIP—TRIAL BY SURROGATE.

Code Civ. Proc. § 2731, providing that where a contest arises between an accounting administrator and any other party, respecting property alleged to belong to the estate, but to which the accounting party lays claim, the contest may be tried and determined in the same manner as any other issue arising in the Surrogate's Court, contemplates that an honest claim of an administratrix to individual ownership of property, claimed by others to belong to the estate, shall be disposed of by the surrogate without determining that she, if unsuccessful, is a tort-feasor, and holding her liable, as for a conversion.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 507.*]

. 5. EXECUTORS AND ADMINISTRATORS (§ 506*)—EXPENDITURES—REASONABLENESS—EVIDENCE.

An administratrix, who has paid $450 for a monument for deceased, may, as bearing on the propriety and reasonableness of the expenditure, there being no creditors of the estate, show that he desired and selected such monument.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2169–2177; Dec. Dig. § 506.*]

· 6. EXECUTORS AND ADMINISTRATORS (§ 511*)—ACCOUNTING—COSTS.

An administratrix, having succeeded as to the more important matters in proceedings to require her account for property claimed by her individually, should not be charged personally with the costs.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2257–2266; Dec. Dig. § 511.*]

Houghton, J., dissenting.

Appeal from Surrogate's Court, Broome County.

In the matter of the judicial settlement of the accounts of Martha M. Niles and another as administrators of Samuel C. Niles, deceased. From a portion of a decree judicially settling their accounts, said Martha M. Niles, individually and as administratrix of said deceased, appeals. John J. Niles, individually and as administrator of deceased, and another being respondents. Reversed, and proceedings remitted to Surrogate's Court.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

John H. Miller, for appellant.
David L. Maxfield, for respondent John J. Niles.
Edmund B. Jenks, special guardian, respondent pro se.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

COCHRANE, J. Samuel C. Niles died intestate April 26, 1907, leaving a widow, Martha M. Niles, and two sons of a former marriage, John J. Niles and Ceylon E. Niles, now an incompetent person, as his only next of kin. Letters of administration were issued May 3, 1907, to the widow and son John J. Niles. May 15, 1907, the administrators filed an inventory showing assets of the estate amounting to $523.35. In June, 1908, the administrator John J. Niles filed a petition in the Surrogate's Court in which he stated that the deceased left a large amount of personal property not included in the inventory which had come into the possession of his coadministrator and for which she refused to account and demanding that she be required to account for such property. A citation was thereupon issued directing her to file an account of her proceedings. She answered the petition of her coadministrator and filed an account alleging her individual ownership of the property claimed by him to belong to the estate. This property consisted of over $3,000 represented by certificates of deposit, about $900 in various promissory notes, and a bond and mortgage of about $1,800 which had been taken by assignment in the joint names of the deceased and the administratrix. At the beginning of the hearing before the surrogate she relinquished her claim of ownership to the promissory notes, but litigated her claim to the certificates of deposit and to the entire bond and mortgage. The surrogate sustained her claim to the certificates of deposit, but held her accountable to the estate for an undivided one-half of the bond and mortgage. The promissory notes have not been collected. Actions are pending undetermined on three of them. The administratrix was not permitted to show the circumstances of these actions. The administrator in his petition admitted that one or two of the notes were possibly uncollectible. The bond secured by the mortgage has not been fully collected, and is not yet fully due.

On the foregoing facts the surrogate has held the administratrix personally liable for a conversion of said promissory notes, and has charged her in the decree with the full amount thereof and with the full amount of the undivided one-half of the bond and mortgage. As to the latter the decree is clearly erroneous. The appellant could not be charged with the proceeds of the bond and mortgage not yet payable by their terms. Furthermore, the court is of the opinion that the assignment of the bond and mortgage to the deceased and his wife took the place of the original mortgage to them for which the deceased furnished the entire consideration and that the wife on the death of her husband succeeded to the entire interest therein. Sanford v. Sanford, 45 N. Y. 723; West v. McCullough, 123 App. Div. 846, 108 N. Y. Supp. 493.

As to the promissory notes, I am unable to see how or in what manner the appellant has converted the same. It is true she claimed to own them and asserted that claim in court, but does a mere claim of ownership by an administrator rightfully in possession of the property render him liable for a conversion thereof? Does an administrator make a personal claim to property under the penalty of being held liable for conversion thereof in case it turns out that it in fact

belongs to the estate which he represents although he may have acted in the utmost good faith in making such claim? We are cited to no authority which answers those questions affirmatively. Although the claim of ownership of the administratrix in this case was unfounded, nevertheless her possession was rightful, and the coadministrator had no superior right to such possession. Although she has claimed to own the property she has committed no act in respect thereto inconsistent with her duty as an administratrix. The ordinary action of conversion implies the exercise of dominion over property to the exclusion of one having a superior right of possession. Whose property has she converted? Not that of her coadministrator, because she assuredly has the same right to its possession that he has. Section 2731 of the Code of Civil Procedure contemplates the trial in Surrogate's Court of just such an issue as here arose. That provision is that where a contest arises between the accounting party and any other party respecting property alleged to have belonged to the estate, but to which the accounting party lays claim, such contest may be tried and determined in the same manner as any other issue arising in the Surrogate's Court. It seems to me that this section contemplates that an honest dispute as to conflicting claims concerning the property of the estate shall be disposed of by the surrogate without determining that the unsuccessful claimant is a tort-feasor and holding him liable as for a conversion. The necessity for such a drastic method does not exist. The Surrogate's Court is possessed of ample power to protect the rights of all concerned by exacting from the administrator an increased bond or otherwise. That was the method approved by this court in Matter of Goundry, 57 App. Div. 232, 68 N. Y. Supp. 155, where the amount of the administrator's bond was increased to cover property claimed by him individually. If the estate has suffered by the negligence or dilatoriness of the appellant she may be held liable, but that has not been established nor even claimed. Only a little more than a year had intervened between the grant of letters of administration and the accounting. Three actions were pending on these promissory notes, and it does not appear that the estate has suffered by any act of omission or commission on the part of the appellant. It was therefore error to charge her personally with the amount of these notes and bond and mortgage.

The administratrix paid $450 for a monument which was reduced by the surrogate to $300. She attempted to prove that the deceased in his lifetime desired this monument and selected it of a dealer in monumental work, which evidence was excluded. I think it should have been received as bearing on the propriety and reasonableness of the expenditure. There are no creditors of the estate, and, if the administratrix was merely carrying out the wishes of the deceased, it cannot be said under all the circumstances here existing that she was unreasonably extravagant in this particular.

It was also error to charge the appellant personally with the costs of the proceeding. As to the more important part of the matters in litigation she succeeded, and should not have been thus charged with costs.

The decree so far as appealed from must be reversed, and the proceeding remitted to the Surrogate's Court, with costs to the appellant, and one bill of costs to the respondents payable out of the estate. All concur, except HOUGHTON, J., dissenting with respect to the conversion of the notes.