The effect of the legislation of 1909 is that the civil remedy is available to all owners of trade-marks of any article of merchandise put up in any receptacle provided they have filed and published the trade-marks subsequent to May 25, 1909, pursuant to section 367 of the General Business Law, and the penal remedy applies to owners of articles mentioned in sections 360 and 361 without the necessity of again filing or publishing, provided they have theretofore complied with the statute in that respect.

In view of these conclusions, it is unnecessary to discuss the other interesting and novel points involved in this case, and judgment must be directed for the defendant.

(85 Misc. Rep. 291)

## In re THOMPSON'S ESTATE.

(Surrogate's Court, New York County. April 10, 1914.)

1. TAXATION (§ 866*)—TRUSTS (§ 61*)—TRANSFER TAX—PROPERTY LIABLE.

Where a passbook evidencing a deposit in a bank was indorsed "M. C. T. in trust for A. T.," and there was no evidence as to the ownership of the money, it must be presumed that the deposit merely created a tentative trust in favor of A. T., which was revoked by his death during the life of the trustee, and hence the deposit is not subject to the transfer tax.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 866;* Trusts, Cent. Dig. §§ 83–87; Dec. Dig. § 61.*]

2. TAXATION (§ 866*)—TRANSFER TAX—PROPERTY SUBJECT.

Where a passbook bore the names of both decedent and his wife, and decedent's daughter testified that the moneys of both were deposited in the account, it will, for the purpose of assessing the transfer tax, be presumed that only one-half of the money belonged to decedent.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 866.*]

3. DESCENT AND DISTRIBUTION (§ 52*)—PRESUMPTIONS—SURVIVORSHIP.

In the absence of evidence of an intent that the survivor should take the entire proceeds of a deposit in the names of both a husband and wife, it will be presumed upon the death of the husband that money deposited was held jointly, and that there was no right of survivorship.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 83, 135–140, 144, 147–149, 151–158, 161–167, 169–171, 296–308; Dec. Dig. § 52.*]

4. EVIDENCE (§ 584*)—WEIGHT AND SUFFICIENCY.

Where decedent's daughter, after signing an affidavit that money loaned upon bonds and mortgages payable to her father and mother belonged to her mother, testified in a proceeding for the assessment of the transfer tax that the money belonged to her father, that testimony being the least advantageous to the witness will be accepted as true.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2424, 2426, 2427; Dec. Dig. § 584.*]

5. TAXATION (§ 879*)—TRANSFER TAX—PROPERTY SUBJECT.

Where a husband assigned his bonds and mortgages to himself and wife, the funds represented will, upon his death, be subject to the transfer tax as a gift intended to take effect at or after death; it not appearing that

there was a gift inter vivos, or that he intended his wife to take except by right of survivorship.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

6. COURTS (§ 91*)—NEW YORK COURTS—DECISIONS—APPELLATE DIVISION.
Decisions of the Appellate Division are binding precedents upon the surrogate.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 313, 325, 326; Dec. Dig. § 91.*]

7. TAXATION (§ 879*) — TRANSFER TAX — CONVEYANCE IN CONTEMPLATION OF DEATH.
In a proceeding to assess the transfer tax, evidence *held* to show that a conveyance made by a decedent to himself and wife as joint tenants was in contemplation of death.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1702; Dec. Dig. § 879.*]

8. TAXATION (§ 895*)—TRANSFER TAX—DEDUCTION.
Where real estate was conveyed by a husband to himself and wife as joint tenants, in contemplation of his death, the wife is entitled to a deduction of the value of her dower on the assessment of the transfer tax.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1714–1721; Dec. Dig. § 895.*]

9. TAXATION (§ 866*)—TRANSFER TAX—PROPERTY SUBJECT.
Where land was conveyed to a husband and wife as tenants by the entirety, it is not subject to a transfer tax upon the death of the husband, the title passing to the wife by virtue of her estate.

[Ed. Note.—For other cases, see Taxation, Dec. Dig. § 866.*]

In the matter of the estate of Alexander Thompson, appeal by the executrix from an order fixing the transfer tax. Order reversed, and appraiser's report remitted for correction.

Lawrence E. French, of New York City (Clarence C. Fowler, of New York City, of counsel), for appellant Thompson.

Thomas E. Rush, of New York City (Thomas A. S. Beattie, of New York City, of counsel), for respondent State Comptroller.

FOWLER, S. [1] The executrix of the estate of decedent appeals from the order fixing tax, and alleges that the appraiser erred in his findings as to the ownership of certain property mentioned in the report, its distribution among the legatees mentioned in decedent's will, and its taxation under the Transfer Tax Law. The decedent was a resident of New York. He died on the 6th of February, 1911. Among the assets included in the appraiser's report is the sum of $2,167.89 on deposit in the Eastchester Savings Bank. The bank book evidencing this deposit was indorsed "M. Celia Thompson, in trust for Alexander Thompson." M. Celia Thompson is the daughter of the decedent. There is no evidence as to the ownership of the money which was deposited in the bank, and in the absence of such proof it will be presumed that the money belonged to the depositor. The deposit of the money in the particular form above indicated created a tentative trust in favor of Alexander Thompson, deceased, but the trust was revoked by the death of the cestui que trust during the life

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the trustee. Matter of U. S. Trust Co., 117 App. Div. 178, 102 N. Y. Supp. 271, affirmed 189 N. Y. 500, 81 N. E. 1177. This money, therefore, did not constitute any part of decedent's estate and should not have been included in the taxable assets thereof.

[2, 3] The decedent and his wife had accounts in various banks. The pass-books issued by the banks bore the following indorsement: "Alexander Thompson or Mary E. Thompson." Mary E. Thompson was decedent's wife. The entire deposits amounted to the sum of $13,-280.82. The appraiser included this amount in the taxable assets of decedent's estate. The only evidence contained in the record as to the ownership of the money at the time it was deposited in the various banks is that supplied by M. Celia Thompson, the daughter of decedent. In her affidavit she alleges that the decedent was in the trucking and monument setting business, and that at various times he gave to Mary E. Thompson, his wife, a part of the profits resulting from the operation of his business; that the money so given to his wife, as well as some of his own money, was deposited by her in the various banks, and that the entire amount deposited in the banks above mentioned consisted of money which belonged to the decedent and money which was the individual property of his wife. The evidence, however, does not show how much of the deposits belonged to the decedent and how much to his wife. In the absence of such evidence it will be presumed that one-half of the money so deposited belonged to the decedent and one-half to his wife. Wetherow v. Lord, 41 App. Div. 413, 58 N. Y. Supp. 778; Matter of Wilkens, 144 App. Div. 803, 129 N. Y. Supp. 600. While the decedent and his wife could, by agreement between themselves, have created a right of survivorship in the deposits, the record contains no evidence of such an agreement; and, in the absence of such proof it will not be presumed that the depositors intended that the entire amount on deposit at the death of either should go to the survivor. Matter of Albrecht, 136 N. Y. 91, 32 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700; Matter of Kaupper, 141 App. Div. 54, 125 N. Y. Supp. 878. Therefore one-half of the amount on deposit in the savings banks at the date of decedent's death passed to his legatees under the provisions of his will and is subject to a transfer tax. The other half belonged to decedent's wife, and should not be included in the taxable assets of decedent's estate.

[4, 5] The decedent and his wife were the owners of certain bonds and mortgages amounting to $38,900. The bonds and mortgages were executed to "Alexander Thompson and Mary E. Thompson, his wife." M. Celia Thompson submitted to the appraiser an affidavit in which she alleged that the moneys which were loaned on these bonds and mortgages belonged to Mary E. Thompson; but when deponent was examined before the appraiser she testified that all the money loaned, and for the payment of which the bonds and mortgages were given, belonged to her father, the decedent herein. The affidavit submitted to the appraiser was evidently prepared by the attorney for the executrix, and therefore the allegations therein contained are not entitled to the same probative force as the direct testimony of the deponent. When she testified before the appraiser her answers to the questions

propounded to her were in her own words, the language was her own, and she evidently testified to the facts from her own knowledge and without the adventitious aid of counsel. As she was an interested witness, the court will assume the correctness of the evidence that is least advantageous to her. Assuming, therefore, that the bonds and mortgages were all purchased with money which belonged to the decedent, it will be presumed, in the absence of evidence of a gift inter vivos of the bonds and mortgages to decedent's wife, that they belonged to him during his life, that he intended to give his wife the right of survivorship, and that as she survived him they passed to her upon his death. West v. McCullough, 123 App. Div. 846, 108 N. Y. Supp. 493, affirmed 194 N. Y. 518, 87 N. E. 1130. They are therefore taxable as a gift intended to take effect at or after death. The decedent assigned to himself and his wife two bonds and mortgages amounting to $3,500. These bonds were originally executed in favor of the decedent individually. In 1905 he assigned them to himself and his wife, but the assignment was not recorded until after his death. The daughter of decedent testified that it was his money which was loaned on these bonds and mortgages. It will be presumed, therefore, that by assigning these bonds and mortgages to himself and his wife he intended to confer upon her the right of survivorship. As the gift took effect in possession and enjoyment upon decedent's death it is taxable under the provisions of the Transfer Tax Act (Consol. Laws, c. 60, §§ 220–245).

[6] While as original questions I might have had some doubt, in view of the law relating to tenancies by entireties, which has been extended to personal property, held by husband and wife simpliciter, yet I am bound to follow the decisions of the Appellate Division, which seem to me to be decisive.

[7-9] On the 26th of January, 1911, the decedent executed certain deeds by which he transferred to himself and his wife as joint tenants certain real estate of which he was then seised. The value of this real estate is about $67,000. The appraiser reported that the value of this real estate was taxable against decedent's widow. At the time the decedent executed these deeds he was nearly 79 years old. He had broken his shoulder in August, 1910, and was confined to his bed for several weeks thereafter. On the 24th of December, 1910, he had an attack of la grippe and suffered from that disease for about two weeks. He sent for his attorney, and asked him to prepare papers which would convey his real estate from him individually to himself and his wife as joint tenants. He said that the conveyance which he had instructed his attorney to prepare was "so that his wife would take the property when he died." On the 26th day of January, 1911, he executed the deeds, and on the 28th his attending physician said that he was suffering from pneumonia. He died nine days thereafter. The decedent at the time he executed the deeds had arrived at an age when the possibility of his early demise must have presented itself forcibly to his mind. His advanced age and failing health must necessarily have suggested to him that under the inexorable law of nature which governs and controls human existence upon this planet, his corporal dissolution must inevitably oc-

cur within a comparatively short period of time. The suffering caused by the broken shoulder rendered him feeble and debilitated, and when this condition was aggravated by two weeks of la grippe, it is easy to understand that he could have but little hope of prolonging his life for any extended period. It was at this time that he executed the deeds, and all the circumstances surrounding their execution seem to lead irresistibly to the conclusion that he made the conveyances in contemplation of death. This conclusion receives additional force from the fact that he died nine days after the execution of the deeds. Matter of Birdsall, 22 Misc. Rep. 180, 49 N. Y. Supp. 450, affirmed 43 App. Div. 624, 60 N. Y. Supp. 1133; Matter of Price, 62 Misc. Rep. 149, 116 N. Y. Supp. 283; Matter of Palmer, 117 App. Div. 360, 102 N. Y. Supp. 236. The appraiser, therefore, was correct in holding that this property passed to the decedent's wife as a gift in contemplation of death. But as she was entitled to her dower in the real estate so conveyed, the value of such dower should be deducted from the appraised value of the real estate. That part of the real estate described as parcel 1, which was conveyed to the decedent and his wife at the time of its purchase, was held by them as tenants by the entirety. Therefore she took this parcel upon the decedent's death by virtue of her right as such tenant by the entirety, and not as a gift made by the decedent to her. It is therefore not subject to a transfer tax.

The order fixing tax will be reversed and the appraiser's report remitted to him for correction as indicated.