(95 Misc. Rep. 76.)

In re MISSIONARY SOC. OF MOST HOLY REDEEMER IN STATE OF NEW YORK.

In re MAGUIRE'S WILL.

(Surrogate's Court, Kings County. April, 1916.)

BANKS AND BANKING ⟨⟩301(5)—HUSBAND AND WIFE—PROPERTY—JOINT BANK ACCOUNT.

> Where savings bank accounts are opened in the names of husband and wife, without evidence in the style of the account, except as found in the names themselves, of an agreement that the deposits were jointly owned, or that either party should take by survivorship, in the absence of proof of ownership of the funds at the time of the deposits, on death of the husband they belong to the wife and form no part of his estate.
>
> [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 1174; Dec. Dig. ⟨⟩301(5).]

Application by the Missionary Society of the Most Holy Redeemer in the State of New York for an order directing Grace Roarty and another to make and file their account as administrators of Annie Maguire, also known as Anna Maguire, as to her proceedings as executrix of the last will and testament of John Maguire, deceased. Account approved as made.

Ernest P. Seelman, of New York City, for administrators.

Lewis S. Goebel, of New York City (George V. Grainger, of New York City, of counsel), for objector.

W. J. O'Donnell, of New York City, for next of kin of Annie E. Maguire.

KETCHAM, S. The savings bank accounts which are the subject of controversy were opened in the names of husband and wife, without evidence in the style of the account, unless it is found in the names themselves, or in any other form, of an agreement or intention that the deposits were jointly owned or that either party to the accounts should take by survivorship. There is no proof as to the ownership of the deposited funds, or any part thereof, at the time of the deposits.

It was once regarded as settled law that under such circumstances it was to be presumed that each of the parties to the transaction owned one-half of the fund individually, that the deposit was the subject of common, and not joint, ownership, and that there was no agreement or purpose that either should take upon the death of the other.

While the decisions in this regard had a firm, but narrow, basis in the rules affecting ownership in common, they took little heed of the common sense—the popular conception—that such deposits would ordinarily not be made, except with the intent that upon the death of one of the parties the other should take the whole fund. It may well be asserted that in any case where, in obedience to rules unknown to the laity, a deposit of this sort was held to be in common and not subject to survivorship, the wish and understanding of the unlearned parties was disappointed.

There are signs of retreat in the recent opinions on this subject. In Matter of Thompson, 167 App. Div. 356, 153 N. Y. Supp. 164, the

Appellate Division of the First Department held that deposits in no respect different from the transactions involved in the case at bar were intended to belong to the wife upon the death of the husband. The court says:

"At the death of the decedent $12,830.82 was on deposit in various banks in accounts entitled 'Alexander Thompson or Mary E. Thompson.' The surrogate held that inasmuch as the evidence did not show how much of the deposits belonged to the decedent and how much to his wife, it would be presumed one-half belonged to each. In reaching this conclusion we think he erred."

While the opinion cited does not treat of the cases expressly contrary to the result therein reached, and is content with stating only cases in which it was known that the moneys deposited were wholly owned by the husband and were deposited by himself, the holding itself cannot be misunderstood.

The accompanying decision of the same Appellate Division, in Matter of Dalsimer, 167 App. Div. 367, 153 N. Y. Supp. 164, was addressed to a transaction in which the parties, however they held the funds involved, made profuse and inevitable evidence of their intent and agreement that their investment should be joint and not common, should vest in each an immediate "unity of interest, unity of title, unity of time, and unity of possession," and should, upon the death of one, be the property of the other by an ownership instituted at the time of the investment. That case is of no present avail.

The authority of the Thompson Case, supra, in the Appellate Division was still subordinate to the explicit judgment of the Court of Appeals in Matter of Albrecht, 136 N. Y. 91, 32 N. E. 632, 18 L. R. A. 329, 32 Am. St. Rep. 700, and Matter of Kaupper, 201 N. Y. 534, 94 N. E. 1095, affirming 141 App. Div. 54, 125 N. Y. Supp. 878, as well as the equally plain rulings of Wetherow v. Lord, 41 App. Div. 413, 58 N. Y. Supp. 778, and Matter of Wilkens, 144 App. Div. 803, 129 N. Y. Supp. 600, but the case has been affirmed without question of the views upon which the result was based. 217 N. Y. 609, 111 N. E. 1101. The decision has been regarded by Mr. Surrogate Schulz as authority for his own ruling, as follows:

"The fact that the bond, mortgage, and certificate of deposit were taken in the names of the husband and wife, in the absence of evidence to the contrary, shows an intention to create in the wife the right of survivorship." Matter of Keil, 91 Misc. Rep. 667, 155 N. Y. Supp. 824.

It follows that the deposits in question belonged to the wife and formed no part of the estate of the husband intestate. The account must be approved as made.

Decreed accordingly.