In the Matter of the Estate of RICHARD MORAN, Deceased.

Surrogate's Court, Monroe County, March 23, 1925.

Husband and wife — joint tenancy — purchase-money mortgage on property deeded to husband and wife taken back on sale of property — evidence as to intention of parties as to ownership of bond and mortgage admissible — evidence establishes intent of husband that wife should own bond and mortgage absolutely — on death of husband, bond and mortgage passed to wife as survivor by operation of law.

In a proceeding in the Surrogate's Court involving the ownership by the deceased and his wife of a purchase-money mortgage on property deeded to the deceased and his wife and taken back as part of the purchase price on a sale of the property, evidence as to the intention of the parties as to the ownership of the bond and mortgage is admissible.

It is established by the uncontradicted evidence that it was the intention of the deceased that his wife, upon his death, should own the bond and mortgage absolutely.

Accordingly, the wife, as survivor, is entitled by operation of law to the entire proceeds arising from the bond and mortgage.

PROCEEDING involving ownership by the deceased and his wife of a bond and mortgage as joint tenants or as tenants in common.

*William J. Maloney,* for the executor.

*Richard E. White,* special guardian, for infants.

BROWN, S. The only question upon the settlement of the above estate is whether or not the deceased and his wife, Frances M. Moran, owned the bond and mortgage, referred to in the petition in the above matter, as joint tenants or as tenants in common.

The administrator and the widow of the deceased cla m that it was owned by Richard Moran, deceased, and his wife, Frances M. Moran, as joint tenants with the right of survivorship.

The special guardian contends that the bond and mortgage were owned in common, and that upon the death of Richard Moran

his share, being one-half, passed to his estate and is to be distributed as provided by the law of distribution. The special guardian called to the attention of the court as sustaining his position the case entitled *Matter of Blumenthal* (236 N. Y. 448). In that case it was held that there was no mention made of joint tenancy in the mortgage, the grant being to Alfred Blumenthal and Hannah Blumenthal, his wife. In rendering their decision in the *Blumenthal* matter, Judge CRANE, writing for the court, states that there was nothing in the case to indicate the intention of the parties except the words: " ' To Alfred Blumenthal and Hannah Blumenthal, his wife.' * * * Under these circumstances the bond and mortgage were held in common and the husband and wife had an equal share or ownership therein."

In the case before us under objection of the special guardian the court received evidence as to the intention of the parties as to the ownership of the bond and mortgage in question. I have considered the subject of the correctness of receiving that evidence and I am of the opinion that it was admissible in this case, and that the rulings of the courts in similar cases as to the law justify it as showing the true state of ownership of the parties. Accordingly, I affirm my ruling as to the receipt of that evidence with exception to the special guardian.

Mr. Moran died without a will leaving money on deposit in his own name and a note of $400 given to him by his son. The bond and mortgage in question was given as to the part of a purchase price of a farm in the town of Rush which was acquired in the names of Richard Moran and Frances M. Moran, his wife, and thereafter the farm was sold and the bond and mortgage in controversy was taken back as a part of the purchase price. It appears that the consideration for the original purchase of said farm was furnished solely by Richard Moran, and that at that time the said Richard Moran directed that the deed should be made out in the name of himself and his wife. This evidence is wholly uncontradicted, and that is not only testified to by Roy F. Snapp from whom the said farm was purchased, but by Arthur Warren who was the attorney representing the above parties in the closing of the sale. It appears that Mr. Warren prepared papers prior to the day of closing having a description typed in the deed and leaving the names of the parties blank. He states that when he met the parties, at the residence of Mr. Snapp, he inquired of Richard Moran as to how the deed was to run and that Mr. Moran stated that he desired the deed to be made in the names of himself and his wife as joint tenants, and he states that he received from Richard Moran a part of the purchase price in

money which was paid at the time in order to acquire the property, and that he thereupon prepared the receipt in his own handwriting and delivered it to Mr. Moran. The deed, Exhibit 1, and the said receipt, Exhibit 5, are in evidence. A Mr. Stein, another witness called by the petitioner and who prepared the papers at the time the farm was sold by Richard Moran and wife, testifies that he inquired as to whom the mortgage was to run and that Richard Moran said that he wanted it to run to himself and his wife, and he further said: " when I am dead I want her to have it all." Theodore E. Longfellow, a witness also called on behalf of the petitioners, testifies that he had known Richard Moran for thirty-five or forty years and that his acquaintance with him was an intimate one. He testified that in 1918 in the month of July, which was about three months after this bond and mortgage was given, he had a conversation with Mr. Moran in which he said " that he had things fixed as he wanted it; if anything happened to him that his wife would have all that he had." There is no evidence herein to contradict this testimony and the evidence is from reputable and reliable witnesses, and the court from such evidence and from all of the evidence in the case is satisfied that it was the intention of Richard Moran that in the event of his prior death his wife should own the said bond and mortgage absolutely.

We must now take up the legal proposition following the findings of fact. There has been difference of opinion relative to the rights of the surviving husband or wife to property in the names of both of them. We first refer to *Matter of Kennedy* (186 App. Div. 188) in the Third Department. This is an authority on the point that it was there decided that a purchase-money mortgage arising from the sale of real estate owned by the husband and wife as tenants by the entirety takes the place of the real estate and presumptively upon the death of either mortgagee passes to the survivor as the real estate which it replaces would have done.

*Matter of Baum* (121 App. Div. 496) in the Second Department and the *Blumenthal* matter referred to by the special guardian (236 N. Y. 448), followed the decision of the *Baum Case* (*supra*) and in so doing the following rule was laid down (p. 452): " The intention of the husband is the thing to be looked for. When he takes the title out of his own name and shares it with his wife, it has been said that this evidences an intention that she shall take by survivorship. [Reference to *Kennedy Case, supra.*] The presumption does not apply to one not a wife. (*Matter of Bolin,* 136 N. Y. 177.) But how can we discover any such intention when we do not know who owned or paid for the property in the

first place? Such an instance was touched upon correctly by the late Mr. Justice BURR in *Matter of Kaupper* (141 App. Div. 54, 57)."

In the *Kaupper* case the decedent left bank accounts in the sum of over $6,000. It appears that the husband of Catharina Kaupper conveyed to her an undivided one-half of a farm which he had previously taken title to in his own name. They both conveyed the property later and took back a purchase-money mortgage. It appears from the evidence in this case that Mrs. Kaupper wanted the title to the mortgage and after some consultation Mr. Kaupper said that he wanted it in both names so that one would receive it in the case of the death of the other. One of the witnesses testified that the old man said that in case he died she would get it and in case she died he would get it, and that Mrs. Kaupper expressed herself as being satisfied with this. A bank account was also opened up in the name of Lorenz or Catharina Kaupper and a similar account was opened in the same bank a few months later in the name of Catharina or Lorenz Kaupper. The teller of the bank testified that Kaupper and his wife came to the bank together and at the time of opening the accounts stated that " they wished to open an account in both names, and in case of the death of either one the survivor to draw the balance of the money."

Without further following the details of the handling of the estate it is sufficient to state that Catharina Kaupper was called upon to account for one-half of the bond and mortgage and one-half of the savings bank accounts. She claimed to be the owner of the whole thereof as survivor of her husband.

Surrogate KETCHAM of the Surrogate's Court of Kings county made a decree overruling the objections and holding in effect that as such survivor she did become the absolute owner of the whole of said property. On an appeal to the Appellate Division in the Second Department (141 App. Div. 57) the court says: " I think that the surrogate's decree should be affirmed. Conceding that the law does not recognize such a thing as tenancy by the entirety in personal property (*Matter of Albrecht*, 136 N. Y. 91, 94), it still does recognize a joint tenancy in personal property, which may be created if the parties so intend, irrespective of whether the tenants be husband and wife, and in such case the right of survivorship does exist. (*West* v. *McCullough*, 123 App. Div. 846; affd., 194 N. Y. 518.) In the absence of direct evidence as to the intent, the law deals with presumptions. It has been held that if the husband and wife each contribute to a joint investment, or to the purchase of a security, and the title is taken in their joint names to be held by them, their executors,

administrators or assigns, no presumption arises from the nature of the act that either intended to make a gift of his or her share to the survivor, and they would hold the same as tenants in common. (*Matter of Albrecht, supra.*) On the other hand, where a husband purchases with his own funds personal property, taking the title thereto in the joint name of himself and his wife, or makes a deposit in the savings bank of his own funds in their joint names, in the absence of other evidence the presumption will be that he intended to confer upon his wife the right of survivorship. (*West* v. *McCullough, supra; Platt* v. *Grubb,* 41 Hun, 447; *McElroy* v. *Albany Savings Bank,* 8 App. Div. 46; *McElroy* v. *Nat. Savings Bank,* Id. 192; *Matter of Meehan,* 59 id. 156.) Where it does not appear to whom the money belonged when it was placed in the bank, or who placed it there, although the bank book may be in the joint name of husband and wife, in the absence of other evidence of intent the presumption will obtain that each had an equal interest therein. (*Wetherow* v. *Lord,* 41 App. Div. 413.) In view of the fact that the real property, which was sold at the time that the bond and purchase-money mortgage were taken, was held under circumstances which would justify a conclusion that the husband and wife owned it as tenants in common, in the absence of other evidence it might be presumed that it was the intent that the securities should be held in the same way. But this presumption cannot prevail if there is uncontradicted testimony of disinterested witnesses as to declarations by both parties, each in the presence of the other, made at the time that the bond and mortgage were executed, that the intent was to create a joint tenancy with a right of survivorship. The same rule would apply to the savings bank accounts."

Again further in the *Kaupper* case (p. 59) the court further states: " But in the case of personal property no instrument in writing is necessary to transfer the title thereto or to create an estate therein, and it would seem unreasonable to insist that, although the title might be transferred and the estate created by parol, evidence as to the character of that estate, and that it was a joint tenancy and not a tenancy in common, must be reduced to writing."

And again the court states (p. 60): " The preponderance of evidence that he intended that his wife should take both the bond and mortgage and the savings bank accounts as survivor is so overwhelming that the surrogate would not have been justified in finding otherwise."

Then the court affirmed the decree of the Surrogate's Court of Kings county. That decision was affirmed by the Court of Appeals

in 201 New York, 534, and in the *Blumenthal Case* (236 N. Y. 448), and at page 452 the court says: " Such an instance was touched upon correctly by the late Mr. Justice BURR in *Matter of Kaupper* (141 App. Div. 54, 57)."

Further authorities favorable to this decision are *Sanford* v. *Sanford* (45 N. Y. 723); *Matter of Niles* (142 App. Div. 198).

The proceeding before us seems to this court to fall within the rule of law and determination reached in *Matter of Kaupper (supra)*.

The difficulty that has arisen in the cases which seem at times in some respect to be contradictory is that the distinction between personal property and real estate as between husband and wife was not recognized and decisions based upon the real estate law, were made relative to personal property. In correcting that error a misunderstanding of the law arose but the cases show clearly, now that the Court of Appeals even following the English law recognize, and a proper state of facts being shown to the court evidencing the intention of the parties and the source of the funds which helped to contribute to the acquisition of the property, that an analogous rule exists relative to the disposition of personal property.

I am, therefore, of the opinion that Frances M. Moran, the wife of said Richard Moran, deceased, became the owner of the whole of the bond and mortgage held by the decedent and herself at the time of his death and in question upon this proceeding as the survivor of the said Richard Moran, deceased.

Accordingly, under section 71 of the Surrogate's Court Act, I hold and decide and determine that the bond and mortgage in question in this proceeding in which Richard Moran and Frances M. Moran, his wife, are named as mortgagees, passed to Frances M. Moran, the survivor of the said Richard Moran upon the death of the said Richard Moran, by operation of law under the facts shown in this proceeding and she is the owner of the entire proceeds arising from such bond and mortgage in question.

Let an order be entered herein in accordance with the terms of this decision and appropriate provision for carrying out the same be inserted in the decree of judicial settlement herein, with costs as of an accounting and contest to the administratrix of the estate of Richard Moran, and with allowance as of a contest to the special guardian for the infant party in this proceeding, both payable out of the estate of decedent.

Said costs and allowances to be settled and fixed at the time of the settlement of the decree herein which may be done on three days' notice or voluntary appearance of the respective parties.