The Roman Catholic Orphan Asylum *vs* Strain.

*In the matter of the Estate of* William Harkin, *Deceased.*

The intestate deposited with R. R. B. H. certain sums, taking a certificate that the same had been deposited by " *William and Ellen Harkin* ; " Ellen Harkin, the wife of William, survived her husband.   *Held*, that it was in form a joint deposit; that having been made in this mode,. with the privity of the husband, it was *primâ facie* a gift to her in case she survived ; and that, not having been disturbed in the lifetime of the husband, it became, on his decease, the absolute. property of the wife.

T. J. Glover, *for the Roman Catholic Orphan Asylum.*

The evidence shows that William Harkin, the husband, and Ellen Harkin, the wife, deposited $1,400 in their joint names with and took from the Rt. Rev. Bishop Hughes a certificate of deposit, or promissory note, shewing that they had so deposited that sum—the same to be returned at *any time after two weeks' notice*, with interest at 5 per cent.

William Harkin died intestate in the summer of 1849, leaving two children and his widow Ellen.   At the time of his death, the said sum still remained on deposit the same as before.   Shortly after William's death, Ellen, his widow, also died, leaving a will, whereby she gave this $1,400 to her two children, and if they died before twenty-one, then to the Orphan Asylum.   The children are both dead, and the Asylum claims the whole of this sum.

The right of the Asylum is not questioned, provided the fund belonged to Mrs. Harkin.   If it was hers to give, there is no doubt of the validity of the gift to the Asylum ; and her right to give it depends upon the question whether it became hers by survivorship.

The general doctrine of the right of the husband to reduce into his own possession all the personal property

and choses in action of his wife during coverture is not disputed. Nor is it necessary to deny, that William Harkin might during his lifetime have called in this deposit, and himself have lawfully discharged the security. But we say that upon the common-law doctrine, where any kind of property or security is taken (though it be by the husband alone) in the *joint names of himself and wife*, and he dies first, not having disposed of it, the wife takes such property or security as her own by *survivorship*. The principle seems to be general, and is based upon the idea that the husband intended such to be the result, from the fact of taking the property or security in their joint names; and, indeed, the fact is without meaning, and of no effect, unless this result is attached to it.

See, the cases and text, *Bright's Husband and Wife*, by *Lockwood*, Vol. 1, *p.* 32.

Where money was lent by the husband, and the security taken in the joint names of *himself and wife*, she was entitled by survivorship. (*Watts* vs. *Thomas*, 2 *P. Wms.*, 364, *cited in Bright, ubi supra.*)

A note to husband and wife survives to her. (*Richardson* vs. *Daggett*, 4 *Verm.*, 336.) So of a note and mortgage. (*Draper* vs. *Jackson*, 16 *Mass.*, 480.) The same of a bond. (*Briggs* vs. *Beach*, 18 *Verm.*, 115.) And a judgment. (10 *Johns. R.*, *p.* 51.)

*2nd.* The property of the wife in this deposit, by survivorship, is still more strongly recognized in equity.

Where a husband purchased stock in the name of himself and wife, Lord Eldon said, it was *primâ facie* a gift to her, in the event of her surviving. (*Wilde* vs. *Wilde*, *Coates* vs. *Steven*, *cited in Bright, ubi supra.*) Same point in *Craig* vs. *Craig*, 3. *Barb. Ch. R.*, 76 ; *Kingdon* vs. *Bridges*, 2 *Vern.*, 67 ; 8 *Ves.*, 99 ; *Christ's Hospital* vs. *Budgin*, 2 *Vern.*, 683.

The doctrine is shown by these cases not to be confined to instances in which the wife is the meritorious cause, by reason of having earned, or otherwise owning, the property

invested. It applies fully as well where the husband invests his own funds in the joint names of himself and wife.

*3rd.* It is objected that she calls it in her will the property of her husband, and that, therefore, it is to be deemed his. But by the same. will she *disposes* of the *whole* of it. She exercises full and complete dominion over it,. the highest evidence of the assertion of her rights. Is not that stronger proof of her title than the loose expression of an illiterate person, not chargeable with the niceties of legal accuracy?

---

J. EDGAR, *for Administrator of William Harkin.*

Should the $1,400 (or thereabouts) deposited with Bishop Hughes, in the joint names of William and Ellen Harkin, and since paid to Strain, as administrator of William Harkin, deceased, be considered as belonging to the estate of William Harkin, deceased, or to that of Ellen Harkin, deceased?

The facts in the case show that the only interest which the wife had in this money, before the death of her husband, was created by the deposit being made in the joint names of the husband and wife. The money was the earnings of the husband without doubt; and the wife afterwards, in making her will (See *Lib.* 99 *of Wills, p.* 143), must have considered it his money, as she calls it such; but she misconceived her legal right to it, and therefore made provision for its use by her will. The money must be considered as belonging to him at the time of deposit, unless there be positive evidence to the contrary. There is no evidence that there was an intention on the part of the husband, in making the deposit in this manner, that it should be for the benefit of his wife.

The question, therefore, arises, whether the act itself without any known intention, was sufficient in law to

create a joint interest for the wife; and also, whether such a deposit was a gift from the husband to the wife.

The money belonging to the husband, the deposit in the joint names of the husband and wife, did not divest him of his exclusive property in it. If the deposit had been made in her name alone, it would still have remained his property. The same law will apply to this deposit which relates to deposits in savings banks, or any other institution for deposits, or to money in possession. The husband, at any time before his death, could have drawn this money, and no one else could legally; and after his death the money vested in his administrator, and he alone was legally authorized to collect it. The Bishop so considered it at the time, or he would not have paid over the money to Strain and taken his receipt as administrator of William Harkin, deceased.

There is no evidence that it was intended as a gift from the husband to his wife; and, even if there were, it is doubtful whether such would be a legal gift.

At common law, a gift from the husband to the wife was void, and we have no statute altering that law, except the gift be made through a trustee specially appointed for the purpose, and named definitely as such. A trusteeship cannot be implied. In this case there was no trustee named, nor can one be implied.

The opposing counsel quoted *Lockwood's Bright's Husband and Wife, p.* 32, §§ 14, 15, 16, 17, and 18, in relation to such gifts—which is English law; but even by that law "there must be satisfactory evidence that the husband has divested himself of the property, and agreed to hold it as trustee for his wife." *Id.,* § 21.

From the reports of cases in this and other States of the Union, it will be seen that there have been many contradictory decisions in relation to the right of survivorship of the wife; but there is no decision supporting the right by survivorship of the wife, in a security given to the husband and wife in their joint names, unless the wife was distinctly specified, or shown to be the meritorious cause of such

security. And further, these securities are almost invariably created by third persons, and not by the husband.

The case in 10 *Johns. R., p.* 51, quoted by the opposing counsel, was that of a bond given for the maintenance of husband and wife " during their joint and several lives." By the condition of the bond, the survivor was specifically named as entitled to the benefit of the bond. Also, in the case in 4 *Verm. p.* 336, " the wife was shown to be the meritorious cause of the note, and the interests of creditors of the estate were not involved." And so of all the other cases quoted by the opposing counsel.

The following cases are offered as relating to the subject :

" Money in the hands of a wife at the decease of her husband, earned and received by her before the marriage, or given to her by her husband afterwards, passes to his administrator." ( *Washburn* vs. *Hall,* 10 *Pick.,* 429.) Same doctrine in 2 *Conn. Rep.,* 564 ; 14 *Conn.,* 99 ; 1 *Hill S. C.,* 191.)

" Money deposited in a bank by a married woman, who with her husband's consent lives separate from him, and is not supported by him, is his money, although it is deposited in her name." (*Ames* vs. *Chew.,* 5 *Met.* 320.)

" Money paid to the wife is paid to the husband, whether he ever received it or not." ( *White* vs. *White,* 2 *How. Miss.,* 931.)

The case of *Dacy* vs. *Chemical Bank,* 2 *Hall,* 550, cited by the opposing counsel, was decided on the question of agency, and not of survivorship ; and the inference is, that the bank would have been held responsible if it had been shown that they knew the depositor to have been a married woman.

" A note payable to a *feme covert,* is payable to her husband, who alone has power during his life to enforce payment, or discharge the demand ; and after his death it will go to his executor or administrator, and not to the wife." (*Shuttlesworth* vs. *Noyes,* 8 *Mass.,* 229.)

" A note made payable to a married woman, is in law a note to the husband, and becomes instantly his property, and her endorsement transfers no property in the note." (*Savage* vs. *King,* 5 *Shep.,* 301 ; *See Chitty on Bills, p.* 23, &c.)

" A direct transfer from husband to wife, without a trustee, conveys nothing, though it respects the wife's interest." (*Parker* vs. *Stuckert,* 2 *Miles,* 278.)

" No agreement between husband and wife can be made during coverture which in legal effect will transfer, by way of gift or sale, any property from the husband to the wife." (15 *Conn.,* 587.)

The money ought to be considered as a part of the husband's estate, and should be accounted for and distributed as such.

THE SURROGATE. The intestate, William Harkin, deposited with the Rt. Rev. Bishop Hughes $1,200, in the joint names of himself and wife, taking as evidence of the deposit a certificate stating that " William and Ellen Harkin have $1,200 on deposit with the Rt. Rev. Bishop Hughes, to draw interest at five per cent. and to be returned at any time after two weeks' notice." Two other sums of $100 each, were subsequently deposited in the same manner. Ellen Harkin survived her husband ; and the point is now submitted, whether the sums so deposited, are to be accounted for as part of the estate of her husband, or belonged a moiety to each, or to her by right of survivorship.

It appears that the deposits were made in this manner for a series of years,—the first certificate being in the same form; and when the amount reached $1,200, it was surrendered and a new certificate issued. The account in the books of the Bishop, was also kept in the names of husband and wife, in accordance with the certificate. There is no evidence beyond the certificate, except the impression of

the Bishop's Secretary, that either party came to make the deposits. He also adds, that this joint deposit is a common, though not a usual form of depositing.

I must, therefore, decide the case upon the face of the certificate, which recites that William and Ellen Harkin had deposited $1,200, to draw interest at five per cent., and to be returned at any time after two weeks' notice. In form it was a joint deposit, and if the depositors had not been husband and wife, there can be no doubt that such would have been its legal character.

The presumption of such a form is, that it was not without design. The transaction itself, the manner in which the deposit was made and the certificate taken, afford satisfactory evidence of the object or purpose. In *Christ's Hospital* vs. *Budgin*, 2 *Vernon*, 683, the husband had lent out money in the names of himself and his wife, upon bonds and mortgages taken in their joint names. The Lord Keeper regarded the wife as a joint purchaser, and as entitled to the securities by survivorship. In *Dummer* vs. *Pitcher*, 5 *Simon*, 35, a testator, before making his will, transferred two sums of bank annuities into the names of himself and wife, and afterwards bequeathed all his funded property to trustees. He subsequently purchased further sums in the stocks, in the names of himself and his wife, and died in her life-time, having no stock except that above-mentioned, exclusive of which his property was not sufficient to pay his legacies. It was held by Sir Lancelot Shadwell and affirmed on appeal by Lord Brougham, that the wife by surviving her husband became absolutely entitled to the sums of stock, there being "nothing to show that the husband intended that the transfers should have any operation but what they legally had." In *Coates* vs. *Stevens*, 1 *Yo. & Coll., Exqr. R.*, 66, the testator bequeathed £2,200 stock, "*his property*" standing in the joint names of himself and wife; and Lord Abinger held that the stock was the absolute property of the wife surviving, saying, "I am of opinion, upon all the decisions, that this is the absolute

property of the defendant (the wife.) The transfers were made to the husband and wife in their joint names, and there is no evidence to show that these transfers were coupled with any trust." In that case, the authorities bearing on the question were copiously cited, and among them Lord Eldon's decision, in *Wilde* vs. *Wilde*, where he said, the purchase of stock by the husband in the joint names of himself and his wife, was *prima facie* a gift to her, in the event of her surviving, unless evidence was produced of contemporaneous acts showing a contrary intention. (See *Craig* vs. *Craig*, 3 *Bar. Ch. R.*, 104; *Richardson* vs. *Daggett*, 4 *Verm. R.*, 336; *Draper* vs. *Jackson*, 16 *Mass. R.*, 480; *Lockwood's Bright's Husband and Wife*, 1, *p.* 32; *Wms. on Exrs.*, 719.) In the present case, it is urged that the wife, in bequeathing the deposit in question, by describing it as the property of her husband, has attached that character to it. I think not. Those are mere words of description; and in any event the force of a possible inference to be drawn from such a misdescription is neutralized, if not overcome, by the fact she disposes of it in her will, as if it were her own property.

The characteristic features of this transaction are analogous to those of the cases which I have cited. The deposit is in the nature of an investment: the money is not to be preserved *in specie*, but to be employed, and interest thereon paid by the depositary. The investment is made with the privity of the husband, in the name of himself and wife; and the certificate of the deposit or investment, is taken in the same names. This was his own act, and establishes a gift to her in case she survived; and he not having recalled it or converted the property into possession in his life-time, and the legal title being in her by survivorship, it is, in the language of Lord Abinger, her " absolute property."

But it is said that at law, gifts from the husband to the wife are void. That relates, however, to direct gifts, not to transactions through the medium of a third person; and, besides, the rule does not prevail in equity, which sup-

ports gifts between husband and wife. (*Lucas* vs. *Lucas*, *Atk.*, 271.) There is no claim in this case by creditors, but the struggle is between the representatives of the husband and the legatees of the wife; and I am clearly of opinion that by the mode of investment adopted by the husband, on his decease leaving her surviving, her title to the property was absolute.