In the Matter of the Judicial Settlement of the Account of Proceedings of ALIDA LOFMARK (Formerly ALIDA WILKINS), as Executrix, etc., of JACOB R. WILKINS, Deceased.

Surrogate's Court, Westchester County, January 9, 1928.

Executors and administrators — accounting — testator died in 1906 — in January, 1902, testator opened checking account in bank of deposit in his own name — in November, 1902, name of testator's wife was added to pass book and her signature card filed with bank — testator, at time of change, stated that he made change so that his wife could have access to funds with right to draw — no intent shown by testator to make gift or to create joint account — balance on deposit at time of death of testator did not pass to wife — bonds and mortgages passed to wife as survivor.

The question involved in this proceeding for a compulsory accounting is the title to a deposit made by the testator in a checking account in a bank of deposit. It appears that the testator, in January, 1902, opened a checking

account in his own name in a bank of deposit; that in November, 1902, the testator caused to be added to the pass book the name of his wife so that the pass book as it then stood carried the names of the testator or his wife. At the time the testator made the change he stated in effect to the officer in charge at the bank that the reason for making the change was so that his wife " could have access to the funds in the account, that she had as much right to draw as he did." The question must be determined as the law existed in 1906, the date of the death of the testator, and under the common law at that time title to a deposit in a bank of deposit in the joint names of the testator and his wife did not become a joint account unless there was evidence and intention on the part of the testator to give the funds to his wife or to make a joint account.

There is no evidence to show any intention on the part of the testator that the account should go to his wife or that they should hold the account in joint tenancy, but on the other hand the evidence clearly shows that the husband intended merely that the wife should act as agent in withdrawing funds from the bank.

Accordingly, the wife did not have title to the funds on deposit in the bank at the time of the testator's death, and must account therefor as funds of the estate.

But bonds and mortgages purchased by the testator in his lifetime and taken in the name of husband and wife, are the property of the wife, as the survivor, and she need not account therefor.

PROCEEDING by executrix for settlement of her account.

*John F. Lambden* [*Sydney A. Syme* of counsel], for the accounting executrix.

*George A. Krug* [*Wallin, Beckwith & Edie* of counsel], for the objectant.

SLATER, S. A compulsory accounting proceeding has resulted in the instant proceeding by the executrix of the testator after a long lapse of years.

Jacob R. Wilkins died a resident of the city of New Rochelle on May 17, 1906, leaving a will which was admitted to probate August 27, 1906. He left him surviving his wife, S. Alida Wilkins, now Alida Lofmark, and three nieces and three nephews, some of whom are beneficiaries of his will. The will was executed October 26, 1904. The following is so much thereof as may affect the issues involved:

" *Second.* I give and devise to my wife, S. Alida Wilkins her heirs and assigns, all that certain tract or parcel of land upon which my dwelling house now stands, which said land was purchased of Livingston Disbrow and is situated on the westerly side of North Avenue in the City of New Rochelle, County of Westchester and State of New York; together with all the hereditaments and appurtenances thereto belonging or in any way appertaining. To HAVE AND TO HOLD the premises above described to the said S. Alida Wilkins, her heirs or assigns forever.

" *Third.* I hereby give, devise and bequeath all the rest residue

Surrogate's Court, Westchester County, January, 1928. [Vol. 131

and remainder of my estate, real, personal or mixed, wheresoever situated, whereof I may be seized or possessed or to which I may be in any manner entitled or in which I may be interested at the time of my death, unto my executors or trustees hereinafter named and to their heirs and assigns, forever. IN TRUST, NEVERTHELESS, AS FOLLOWS:

" *Fourth.* I will and direct that all the rest, residue and remainder of my property shall be consolidated into a permanent fund, to be safely and conservatively invested upon bond secured by mortgage upon real estate, or in such other first-class securities as to my executors and trustees shall seem best, excluding, however, bonds of new railroads; and such investments as to be made so as to yield a regular interest and income, which shall be paid out, expended, and divided by my said executors and trustees as hereinafter more particularly set forth. I hereby also authorize and empower my said executors and trustees, or the survivors or successors of them, to grant, bargain, sell, convey and dispose of any lands, tenements, or property, real or personal, whereof I may be seized at the time of my death, or of which they may be seized or possessed as my executors and trustees, and upon any such sale thereof to execute, acknowledge, and deliver all necessary and proper deeds or instruments of conveyance in the law for the vesting in the purchaser or purchasers the title thereof in fee. And I also authorize and empower my said executors and trustees, from time to time, in their discretion, to receive or call for the payment of and to sell and deliver and to make any necessary assignments or transfers of any and all of the property or securities, in or upon which the said money or fund, or any part thereof shall be invested, and the same again to reinvest in or convert into other securities. * * *

" *Sixth.* I direct that all the profits, interest, and income of the said fund, as the same shall be received by my said executors and trustees, after deducting their expenses, commissions, and disbursements, shall, during the life of my wife, S. Alida Wilkins, or as long as she remains a widow, be paid by my said executors and trustees to my said wife, and that her receipt for such payments shall be a full and sufficient acquittance and discharge of my said executors and trustees.

" *Seventh.* Upon the death of my said wife or upon her remarriage, I hereby will and direct that the entire principal of the said fund shall be divided equally share and share alike between Augusta Wilkins Cummings, now residing in New York City, States Wilkins, now residing at Yonkers, Leon Wilkins, now residing at Yonkers, and Jacob Wilkins, now residing at Yonkers. If any of the last

named persons shall die before myself or my wife, I hereby will and direct that the share of the deceased shall be equally divided among the survivors."

Jacob R. Wilkins and Alida Wilkins were married in February, 1891. Alida Wilkins, the widow, was remarried December 28, 1909, to Nils J. Lofmark.

When the decedent executed his will in October, 1904, he had a balance to his credit in the New Rochelle Trust Company of $3,558.13; he owned a parcel of real estate situate on the northeast corner of One Hundred and Twenty-fifth street and Lenox avenue in the city of New York, and the home situate on North avenue, New Rochelle. He had inherited a one-third interest in said real property in New York city from his father who died in 1887, and had acquired the other two-thirds interest from his two brothers, the first by deed dated February 18, 1887, and the other third interest by deed dated January 22, 1902.

The home in New Rochelle, devised to the decedent's widow, was conveyed to her by deed dated March 28, 1906. The testator sold and conveyed the premises situate in New York city by deed dated April 5, 1906, in which deed his wife Alida joined, receiving in cash therefor $133,452.16.

On January 21, 1902, the decedent opened a checking account in his own name with the New Rochelle Trust Company, with an initial deposit of $541.67. The bank official who received this deposit was represented by the word " Van "— probably meaning " Van Zelm," the witness who testified. Thereafter, from time to time, he made further deposits in said account and certain withdrawals, so that on November 15, 1902, the balance of said account remaining to his credit was $7,141.11. There was offered in evidence the usual signature card filed with the New Rochelle Trust Company, with the testator's signature " Jacob R. Wilkins " thereon, after the printed word " signature,"— " Address — North Avenue, New Rochelle,— Date — Jan. 21, 1902." This date corresponds with the date of the issue of the pass book to said Jacob R. Wilkins. The said New Rochelle Trust Company produced a signature card having thereon the signature " Mrs. Alida Wilkins," apparently in her handwriting, with the address " New Rochelle " — " Husband's name — Jacob R. Wilkins — Date — Nov. 16, 1902." All the writing, save the signature, is apparently in the handwriting of the testator. All other records and books of the banking institution, relative to this account and other accounts of a similar date, had been destroyed pursuant to the rules of the bank.

The accounting executrix produced the original pass book of account with said trust company, as well as subsequent pass books

in her own name after the death of her husband, and certain memorandum of checks usually returned by a commercial bank as the account stated. On the top of the 2d page of the pass book is written " Alida Wilkins or," above the name " Jacob R. Wilkins," causing it to read " New Rochelle Trust Company in Acct with Jacob' R. Wilkins or Alida Wilkins." The bank clerk who wrote the words " Alida Wilkins or " was produced. He recalled the event and recognized the writing as having been made by him.

Various deposits were made after November 16, 1902. On April 6, 1906, the amount of $133,452.16, being the money received from the sale of the real property in the city of New York, was deposited and entered upon the pass book.

Four certain checks drawn upon the New Rochelle Trust Company, signed Jacob R. Wilkins, all to the order of John F. Lambden, dated April 11, 1906; April 18, 1906; April 19, 1906, and April 23, 1906, were offered in evidence. A group of five checks was offered in evidence, drawn upon the New Rochelle Trust Company to the order of John F. Lambden, signed Alida Wilkins, dated May 1, 1906; May 5, 1906; two dated May 10, 1906; another dated May 14, 1906; the last three being countersigned by J. A. Huntington, cashier. These several checks were in amounts that were invested by John F. Lambden, an attorney and counselor at law, in certain bonds and mortgages. Between April 12, 1906, and May 17, 1906, the date of testator's death, oans were made on bonds and mortgages offered in evidence, aggregating $78,500, in the names of " Jacob R. Wilkins and Alida Wilkins, his wife." After the testator's death, which occurred May 17, 1906, certain other checks signed by Alida Wilkins were drawn upon the New Rochelle Trust Company in small amounts to the order of various persons, dated May 18, 1906, to May 22, 1906. All the checks herein above referred to were drawn against and debited to the checking account which the testator had in said New Rochelle Trust Company. At the time of the testator's death on May 17, 1906, there was a balance in the account of $43,276.02.

The executrix in the instant accounting proceeding, charges herself with $410, and with payments therefrom, leaving a balance of $41.61 in her hands. The ultimate beneficiaries under the testator's will filed objections thereto, contending that said account fails to disclose all the property of which the deceased died seized or possessed.

Two questions of law are raised by the objections:

Was the checking account in the New Rochelle Trust Company a joint account ample to create the right of survivorship in the deposit in the wife?

Misc. 188]   Surrogate's Court, Westchester County, January, 1928.

Was the right of survivorship created in the bonds and mortgages taken in the name of the husband and wife, so that upon the death of the husband the wife took title to the whole of said bonds and mortgages?

The counsel have prepared their briefs on the theory that there are two distinct questions. There are two legal questions presented, but they are binary and interwoven, occasioned by the ownership of the deposit. If a joint account was created in the deposit in the New Rochelle Trust Company, the law relating to the title to the bonds and mortgages in the name of the decedent and his wife would be one way. If the account in said trust company was not a joint account, then a different ownership exists resulting from the application of a different principle of law with regard to the bonds and mortgages taken in the name of the testator and his wife, because the money was the *sole* property of the husband.

Judicial notice will be taken of the fact that the New Rochelle Trust Company was, and still is, a commercial banking institution chartered under the laws of the State of New York.

The court will first consider the question of the balance remaining in the checking account on May 17, 1906, the date of testator's death.

The briefs of counsel with reference to the creation of joint accounts in banks refer entirely to deposits in *savings banks*. The law of title to savings bank deposits has been a prolific source of controversy. There has been a paucity of cases on the law of the ownership of deposits in checking accounts of banks of deposit.

A savings bank is entirely different from a commercial bank in its foundation, its place in the social structure and in its methods of business. A savings bank is an institution for the accumulation of small sums, chiefly the savings of the poorer classes, organized by philanthropic movement, where the trustees give their services gratuitously, the State prescribing the classes of investments. The chief problem of a savings bank is the safekeeping of the funds.

The commercial bank is one which receives deposits, makes discounts and issues notes. They are lenders and borrowers. They may or may not pay interest on deposits subject to check. The law gives certain powers to commercial banks which are not invested in savings banks. Business banks are chartered by both the State and the Nation. They may now serve as guardian, receiver, trustee. The depositor pays his debts by orders upon the bank in the form of checks. The savings banks adopt plans to restrain the depositor from making sudden calls for any considerable amount of his deposit. From a social point of view,

13

the commercial bank plays an important part in supplementing the currency of the country. One feature of savings banks is that both their deposits and investments are as a rule of a more permanent character than those of commercial banks. A commercial bank at any time without notice to the depositor has the right to set off his deposits against any debt. (*Delano* v. *Equitable Trust Company*, 110 Misc. 704.) The right to make application to the debt is determinable by the ordinary rules of law relating to the right of set-off. This is called a banker's lien, being recognized in commercial law and being commercial usage. (1 Morse Banks & Banking [5th ed.], § 334.)

There is another keen distinction between savings banks and commercial banks with reference to the pass book. In the savings institution, title to the account may be created by gift accompanied by delivery of the bank book. (*Foley* v. *New York Savings Bank*, 157 App. Div. 868.) The recent case of *Brophy* v. *Haeberle* (220 App. Div. 511) treats of the question of the bank book of a commercial bank. Does the delivery of a bank book on a commercial bank with a statement that the depositor gives the book and the balance in the bank to the transferee, constitute a valid gift *causa mortis?* The court said: " It is settled by a long line of decisions in this jurisdiction that there may be a valid gift *causa mortis* of a savings bank book and account. * * * It has never been determined by any court in this State, as far as I have been able to ascertain, that the same rule applies to an account in a commercial bank of deposit and discount. * * * It was held that a savings bank book was an evidence of the debt, that a savings bank is not obliged to pay the depositor except upon production of the bank book. * * * The reason for holding an oral gift of a savings bank book valid is entirely lacking in the case of an attempted transfer by gift *causa mortis* of a commercial bank book." (See, also, *Wetherow* v. *Lord*, 41 App. Div. 413; Brantley Pers. Prop. § 216, p. 315.)

Another difference is noted in *Noah* v. *Bank for Savings* (171 App. Div. 191, 193).

In this State the relation between the depositor and the savings bank and the commercial bank is a debtor and creditor relation. The money deposited becomes a part of the bank's general funds, and the commercial bank contracts to pay its depositor's checks acceptances, notes payable at the bank, and the like, to the amount of his credit. It pays its own money as a debtor, not its depositor's money as an agent. (*Fowler* v. *Bowery Savings Bank*, 113 N. Y. 450; *O'Connor* v. *Mechanics' Bank*, 124 id. 324, 330; *Baldwin's Bank* v. *Smith*, 215 id. 76, 82; *General Fire Assurance Company* v. *State*

*Bank,* 177 App. Div. 745, 750; *Amsden* v. *Traders National Bank,* 182 id. 474; *Erb* v. *Banco di Napoli,* 243 N. Y. 45.)   In *Glennan* v. *Rochester Trust & S. D. Company* (209 N. Y. 12) Chief Judge CULLEN spoke of a difference, however, saying: " There is a difference between the liability of banks to their depositors and that of ordinary debtors to their creditors."   And a bank can go beyond the ordinary debtor and creditor relation and submit to 'the court any controversy over the ownership of a deposit.   (*White* v. *Bank of Angola,* 130 Misc. [1927] 99.)

A check is a request of the customer to pay to the bearer and the check vests no title, legal or equitable, in the fund before acceptance.

In 1914 the Banking Law was revised.   (Laws of 1914, chap. 369.)   Up to that time the Banking Law only dealt with the form of accounts to be made in savings banks.   It was continued and made applicable to banks (§ 148) trust companies (§ 198), and savings banks (§ 249), in precisely the same language, except such change as was necessary to make it applicable to the different kinds of banking institutions.   Now the law in relation to commercial banks and trust companies is: " When a deposit shall have been made by any person in the name of such depositor and another person and in form to be paid to either, or the survivor of them, such deposit thereupon and any additions thereto made, by either of such persons, upon the making thereof, shall become the property of such persons as joint tenants, and the same, together with all interest thereon, shall be held for the exclusive use of the persons so named, and may be paid to either during the lifetime of both, or to the survivor after the death of one of them."   (Banking Law, § 198.)   Thus, for the first time, with reference to commercial banks and trust companies, the common-law rule in relation to gifts of such bank deposits was modified, giving to the deposit in the form named the value of raising a *presumption of an intent* to make an immediate gift.   (*Matter of Fonda,* 206 App. Div. 61, 63; *Matter of Buchanan,* 184 id. 237.)   In 1906, at the time of the deposit in the instant case, there was no statute law upon the subject of deposits in commercial banks.

Undoubtedly, the question presented here must be decided according to the common-law rule that existed in 1906, without reference to later legislation.   (*Matter of Marshall* v. *Marshall,* 217 App. Div. 229.)   What was the common-law rule at that time?

In the instant case the deposit was the husband's sole money. There is no evidence that there was any other account in the trust company, either in his name, or in the name of the wife.   The husband had the right to give her the money and make her the

creditor of the bank instead of himself. Certain methods must be employed under the common law to change ownership in a debt. The husband could have divested himself absolutely of the dominion and control of the funds by making a gift *in præsenti*, or a declaration of trust, or assignment, could have been made, or a joint deposit scheme could have been arranged. Neither of the first two efforts to affect ownership was done. A gift was not created, because he kept control of the funds. One of the instances of ownership is the right to collect the chose in action and reduce it to possession. (*Scheffer* v. *Erie County Savings Bank*, 229 N. Y. 50.) No assignment was made, either in writing, or orally. Was a joint account created as claimed by the executrix?

The question of the intent of the depositor in opening or changing an account is a question of fact to be determined on all the evidence in the case. (*Morris* v. *Sheehan*, 234 N. Y. 366.) The court endeavors to avoid subversion of the real intention of the depositor. (*Matter of Totten*, 179 N. Y. 112.) " The intention of the husband is the thing to be looked for." (*Matter of Blumenthal*, 236 N. Y. 448, 452.)

In *Matter of Pitou* (79 Misc. 384) KETCHAM, S., said: " Where the nature of the relations to the fund is so often to be derived from parol evidence of the acts, declarations and understanding of the parties, it is as dangerous as it is unnecessary to assume a joint tenancy or any other kind of tenancy, unless the intention to create it affirmatively appears. It is dangerous, because unless the intention to create a joint tenancy appears expressly, it should not be loosely gathered from the mere intention that the survivor should take the whole fund. * * * There is a growing opinion in the cases that the disposition of these deposits or investments in the case of death should be rested wholly upon the agreement or intent as to the disposition upon death."

The only testimony offered as to what happened at the time Mrs. Wilkins left her signature at the trust company on November 16, 1902, was given in the language of the now president of the trust company, Mr. Henri Van Zelm, who was connected with the bank in 1906. He was asked if there was any change made in the bank account. " A. Yes. Q. What was the change made? A. Alida Wilkins' name was put on the book. Q. In addition? A. In addition to Jacob R. Wilkins. Q. What did Mr. Wilkins say to you? I do not mean the exact words. What did he say to you in regard to the making of the change? A. *So Mrs. Wilkins could have access to the funds in the account, that she had as much right to draw as he did*." I think that here is found the understanding — the intent — at the very time the signature of the wife

was filed.    (*Bonnette* v. *Molloy*, 153 App. Div. 73; *Moore* v. *Fingar*, 131 id. 399.)

"The most direct form of evidence as to the depositor's intent, aside from the deposit itself, is the express statement of the depositor concerning his intent.   *  *  *   Direct statements by the depositor that he intended a trust, made after the deposit, are given much weight."   (Bogert's The Creation of Trusts by Means of Bank Deposits, 1 Cornell Law Quart. 159, 161.)

Henry A. Siebrecht, a neighbor of the testator, testified in reference to a talk he had with the decedent in 1906, after he had sold his New York real estate, four years after the bank transaction, saying that decedent said he was going to put it in mortgages (meaning the money from the sale), and further, that "Nig [meaning his wife] is going to get all I have when I am gone."   He said the testator said: "I put it all in the bank in both our names so there will not be any trouble."

As to the testimony of Mr. Siebrecht: Verbal declarations of the decedent tending to change the bank transaction, uncorroborated by other facts or evidence, must be weighed with very great caution.   Such made in the course of casual conversation when testified to after a great lapse of time should be given little probative force.   (*Wallace* v. *Wallace*, 158 App. Div. 273, MILLS, J.; affd., 216 N. Y. 28.)   How much is inference, or how much is recollection?   In a case like this where a slight verbal change may be most significant, testimony of this character is of little force.

If the donee is merely empowered to draw money in accordance with instructions from the donor, he is only an agent and the agency terminates with the death of the donor.   (28 C. J. 701, § 131; *Matter of Bolin*, 136 N. Y. 177, 179.)   Even in case of a gift by transfer it has been held that the transfer should be considered as having been made merely for the convenience of the donor, unless another purpose is clearly indicated.   (31 Yale L. J. 776; *Maine Savings Bank* v. *Welch*, 121 Me. 49; 115 Atl. 545.)   The right to withdraw money from a bank account is not evidence of a gift of the money, or of the account, and does not create a joint account. The mere form of the account will not be regarded as sufficiently establishing the intent of the person making it to create a trust in behalf of another, or to give another a joint interest, or ownership of the deposit.

The court now looks into the facts and circumstances surrounding the deposit to determine the true intent of the deposit.   (N. Y. L. J. July 2, 1925, p. 1280; *Beaver* v. *Beaver*, 117 N. Y. 421; *Matter of Bolin*, *supra*; *Matter of Totten*, 179 N. Y. 112.)

The question of intent enters fully into the case. CHENEY, J. (*Havens* v. *Havens*, 126 Misc. 155; affd., 215 App. Div. 756), wrote an illuminating opinion on the subject of savings bank deposits. At page 159 he said, with reference to intent: " It thus appears that the courts had decided that in all these different forms of deposit, the decisive fact of the transfer of title was the intent of the depositor; that such intent was not to be determined from the form of the deposit alone, but it still remained a question of fact to be decided in each case from all the evidence upon that subject produced at the trial." The *Havens* case did not deal with a deposit made by a husband and wife.

There is a line of cases relating to persons, not husband and wife, which hold from the proof offered that it was the intention to create the deposit for accommodation only and not for the purpose of creating any rights in the other person. (*Heiner* v. *Greenwich Savings Bank*, 118 Misc. 326, and cases cited.)

The court's research, as well as that of counsel, has failed to disclose any case having to do with the establishment of joint accounts in commercial banks. All of the cases refer to deposits in savings banks. There have been court decisions, later written in the statute, with regard to the form of the deposit in savings banks in order to create survivorship. When deposits are made in checking accounts in commercial banks, there is no thought that it is there as the poor man's will, or for the purpose of paying funeral expenses, or latterly, for the purpose of going to the survivor of the account, unless the account is *evidenced by proven intent*, either by words or in writing. Here there is evidence to the contrary by the words of the bank official (*Matter of Thompson*, 167 App. Div. 356, 360; affd., 217 N. Y. 609), and the right of survivorship in the face of this evidence cannot be presumed. The presumption is rebutted. It is a business account. A difference is written into the law in relation to joint accounts, between parties who do not take on the relationship of husband and wife, and where that relation exists. The pioneer cases where evidence of indebtedness belonging to the husband was taken in the name of husband and wife, in which the court held it showed that the husband intended to give it to her in case she should survive him, and that a delivery to her was unnecessary to effect the gift, are *Draper* v. *Jackson* (16 Mass. 480 [1820]); *Borst* v. *Spelman* (4 N. Y. 284 [1850]); *Roman Catholic Orphan Asylum* v. *Strain* (2 Bradf. 34 [1851]); *Sanford* v. *Sanford* (45 N. Y. 723 [1871]); *Curry* v. *Powers* (70 id. 212 [1877]). The later cases are *Augsbury* v. *Shurtliff* (180 N. Y. 138); *West* v. *McCullough* (123 App. Div. 846); *Matter of Thompson* (167 id. 356; affd., 217 N. Y. 609).

Where the sums deposited are shown to belong equally to husband and wife, or the source is not disclosed, the rule is that they hold as tenants in common.

Our courts have followed the English cases and held that debts, owned by the husband, taken in the name of husband and wife, omitting the word " jointly," evidences an intention to create the right of survivorship in the debt. That would apply, of course, to a deposit in a commercial bank if intended by the parties. With reference to the ownership of a debt in the husband, or wife *solely*, in order to transfer ownership, the common-law rule must be observed. (With regard to commercial bank deposit — a debt — the Banking Law changed the rule in 1914.)

In the instant case a debt was created by the deposit. The New Rochelle Trust Company owed Jacob R. Wilkins a certain sum of money indicated on the pass book of credits. The holding of the pass book by the testator was consistent with a mere agency of the wife.

Did the testator create the " peculiar estate " of survivorship in this account, by his acts, because of the marital relationship? Did the husband intend a joint tenancy?

Mr. Justice MILLER in *West* v. *McCullough* (123 App. Div. 846) referred to the peculiar relationship existing where husband and wife make deposits in savings banks, and said: " *That right, instead of being based on the general rule, was rather an exception to it.*" He traces the character of the transaction and calls it: " This peculiar estate or interest, * * * was an outgrowth of doctrines applicable to the status of husband and wife at common law." And he says further: " The question then is one of intention, to be determined by presumptions in the absence of other proof."

It may be shown by evidence that the depositors as between themselves did not intend to create a joint tenancy. The policy of the law in this State does not favor joint ownership. (*Clary* v. *Fitzgerald*, 155 App. Div. 659; affd., 213 N. Y. 696; Real Prop. Law, § 66.)

The word " or." and the word " and " mean the same thing where it connects the name of two persons for a deposit. (*Clary* v. *Fitzgerald*, *supra*.) No presumption exists evidencing the intent on the part of the testator to create a joint account. There is proof to the contrary. Only an agency was created with the right to draw checks upon the account standing in his name for the purpose of convenience. To infer a gift from the form of the deposit would impute an intention which never existed. It is my opinion that under the common-law principle there was not a valid gift, nor was a declaration of trust made; nor was a joint

estate created in the fund. A joint account was not created when the wife signed her name upon a separate signature card in the light of the testimony of the official of the bank, which declared the intent of the testator. In fact, the wife drew on the account during the life of her husband, for his convenience of investment of the fund on bond and mortgage.

In my judgment, the evidence shows that the name of the wife was added for convenience only, and no other purpose is clearly indicated. (31 Yale L. J. 776.)

I hold that the peculiar estate — the right of survivorship created by the courts, and later written into the statutes with regard to savings bank deposits, involving the name of husband and wife — did not apply to the deposit in the New Rochelle Trust Company in 1906. The common-law rule for the change of ownership of such character of personal property as deposits in commercial banks existed in 1906, but it was not followed by the testator. He did not create such a joint tenancy as to do away with the formalities necessary for changing title under the common-law rule.

I conclude that the amount of $43,276.02 on deposit in the New Rochelle Trust Company to the credit of the testator at the date of his death is to be accounted for by the executrix as funds of the estate.

The other twin legal question relates to the investments by the testator in his lifetime in the bonds and mortgages taken in the name of husband and wife. The law applied to savings bank deposits made in the name of husband and wife has been held to apply to bonds and mortgages running to husband and wife, when the words " jointly " or " joint tenants " has not been added in the instrument. At the trial the evidence of John F. Lambden, attorney and counselor at law at New Rochelle, was offered by the petitioner. Objection was made thereto and decision was reserved on the motion. I now sustain the objection and exclude the testimony given by Mr. Lambden, and shown in the record. (*Matter of Cunnion,* 201 N. Y. 123; *Matter of McMahon,* 191 App. Div. 926; *Matter of Eno,* 196 id. 131; *Moore* v. *Fingar,* 131 id. 399, 402.)

A careful analysis of all the cases upon the right of survivorship of husband and wife in bonds and mortgages reveals that one of the main essentials to be considered is whether the husband owned the money *solely* which went into the investment — whether he had " controlling authority." In all of the cases much emphasis is laid upon the fact whether it was the *husband's sole* money. Being his sole money the law presumes he intended to benefit the wife when he caused her name to be added.

In *Matter of Albrecht* (136 N. Y. 91) the husband and wife each

invested the sum of $3,000 in the bond and mortgage, and the court held that they became tenants in common. In *Matter of Niles* (142 App. Div. 198) the husband paid the *entire consideration.* The court said the wife on the death of the husband succeeds to the entire interest. *West* v. *McCullough* (123 App. Div. 846) was a savings bank account case. Judge MILLER, who wrote for the court said: "When George W. McCullough changed the savings bank account to the names of himself and wife he had *controlling authority* for believing that that act evidenced an intention on his part to benefit his wife to the extent of a right of survivorship in said fund   *   *   *. By making a deposit or taking a security in the name of himself and wife, the husband could create a right of survivorship in the wife." In *Matter of Kennedy* (186 App. Div. 188) husband and wife took a purchase-money mortgage resulting from the sale of real estate owned by husband and wife as tenants by the entirety, as well as another mortgage arising from the sale of real estate owned *solely* by the husband. The wife did not furnish any part of the consideration of the last referred to mortgage. The court decided that the mortgage standing in the joint names of husband and wife constituted *prima facie* evidence of a gift to the wife in the absence of evidence showing contrary intention.

*Matter of Baum* (121 App. Div. 496; appeal dismissed, 190 N. Y. 564) was a tenancy by the entirety case, and also a case where the husband owned real estate and conveyed it and took back a purchase-money bond and mortgage to husband and wife. In that case the court held that they took as tenants in common.

*Matter of Kaupper* (141 App. Div. 54; affd., 201 N. Y. 534) is a valuable contribution to the law of the subject. Here Mr. Justice BURR said: "So far as the character of the property is concerned there is no difference between the savings bank accounts and the bond and mortgage." (*Matter of Pitou,* 79 Misc. 384, KETCHAM, S.; *Matter of Larmon,* 212 App. Div. 273.)

*Matter of Blumenthal* (236 N. Y. 448) is the last case on the subject. That was a tenancy by the entirety case. Real property was sold and a purchase-money mortgage was executed to husband and wife. The husband died first. The court held that the bond and mortgage amounted to ownership in common, there being no mention that the security was to be held in joint tenancy. Judge CRANE, in writing for the court, said: "The intention of the husband is the thing to be looked for. When he takes the title out of his own name and shares it with his wife, it has been said that this evidences an intention that she shall take by survivorship."

Judge CRANE, after reciting the facts, sets forth his argument upon the general proposition (at p. 450) by saying: "If the bond

and mortgage are to be treated," etc., and again, at page 451: " On the other hand, if the bond and mortgage are to be treated like any other bond and mortgage," etc. Later he refers to and analyzes cases.

The law laid down in the *Blumenthal* case I find at page 452, beginning with " The intention of the husband is the thing to be looked for. When he takes the title out of his own name and shares it with his wife, it has been said that this evidences an intention that she shall take by survivorship. (See cases cited in *Kennedy Case, supra.*) The presumption does not apply to one not a wife. (*Matter of Bolin,* 136 N. Y. 177.) But how can we discover any such intention when we do not know who owned or paid for the property in the first place? Such an instance was touched upon *correctly* by the late Mr. Justice Burr in *Matter of Kaupper* (141 App. Div. 54, 57): ' * * * It has been held that if the husband and wife each contribute to a joint investment, or to the purchase of a security, and the title is taken in their joint names to be held by them, their executors, administrators or assigns, no presumption arises from the nature of the act that either intended to make a gift of his or her share to the survivor, and they would hold the same as tenants in common. On the other hand, where a husband purchases with his own funds personal property, taking the title thereto in the joint name of himself and his wife, or makes a deposit in the savings bank of his own funds in their joint names, in the absence of other evidence the presumption will be that he intended to confer upon his wife the right of survivorship. * * * Where it does not appear to whom the money belonged when it was placed in the bank, or who placed it there, although the bank book may be in the joint name of husband and wife, in the absence of other evidence of intent the presumption will obtain that each had an equal interest therein. (*Wetherow* v. *Lord,* 41 App. Div. 413.)' "

I conclude that this court should follow *Matter of Blumenthal* (*supra*) in holding that " on the other hand, where a husband purchases with his own funds personal property, taking the title thereto in the joint names of himself and his wife, or makes a deposit in the savings bank of his own funds in their joint names, in the absence of other evidence the presumption will be that he intended to confer upon his wife the right of survivorship."

In *Brosnan* v. *Gaffney* (209 App. Div. 430) the real property belonged *solely* to the husband, but it was sold and the court held that the purchase-money bond and mortgage taken in the name of husband and wife was held in common between the husband and wife and each had an equal share or ownership therein.

The fact that Jacob R. Wilkins made his will on October 26, 1904, a considerable time before the making of the bonds and mortgages, leaving to his wife an estate for her life or until her remarriage, does not necessarily conflict with his intention that his wife should own said bonds and mortgages, should she survive him. (*Matter of Kaupper*, 141 App. Div. 54, 60; affd., 201 N. Y. 534; *Kelly* v. *Beers*, 194 id. 49, 58.)

It will be observed that the court's decision in relation to the bonds and mortgages is based entirely upon the conclusion that the money on deposit in the New Rochelle Trust Company was the *sole* money of the testator. Should it be held upon appeal in the instant case that a joint account was created in the money on deposit in the New Rochelle Trust Company, the funds going into the several bonds and mortgages would not be the *sole* money of the husband. If the *joint* funds of husband and wife went into the bonds and mortgages, they were held by husband and wife as tenants in common. (*Matter of Blumenthal, supra; Brosnan* v. *Gaffney, supra.*) To paraphrase the *Blumenthal* opinion in part (*supra*, p. 453), to say the bonds and mortgages took the place of the joint bank deposit " is merely to jump at a conclusion." " True it would take the place of the [bank account] as a possession of like value *but not necessarily of like ownership.*"

It may be said that logically the horns of a dilemma appear.

I shall hold that the bonds and mortgages in the instant case are the property of the wife, as surviving spouse, and need not be accounted for by her as executrix of the decedent's estate.

Submit decision, with notice to counsel, based upon the conclusions reached in this opinion.