**Fred BALDWIN et ux., Appellants,**

v.

**PEOPLES NATIONAL BANK OF TYLER,**
Appellee.

**No. 7150.**

Court of Civil Appeals of Texas.

Texarkana.

Sept. 1, 1959.

Rehearing Denied Sept. 22, 1959.

Sam Dawkins, Jr., Leffingwell, Dawkins & Oehmann, Dallas, for appellants.

Spruiell, Lowry, Potter, Lasater & Guinn, Tyler, for appellee.

FANNING, Justice.

The opinion of August 4, 1959, in this cause is withdrawn and the following opinion is substituted in lieu thereof. Appellants' motion for rehearing is overruled and the judgment of the trial court is affirmed.

Fred Baldwin and wife sued appellee bank for damages for the allegedly wrongful offset from their deposit accounts with appellee bank and also sued for an alleged double usury penalty. Defendant bank's motion for summary judgment was granted by the trial court and plaintiffs have appealed.

On July 27, 1957, appellants opened a savings account with appellee by depositing $4,000. On July 29, 1957, appellant Fred Baldwin borrowed $2,500 from appellee, executing a note in that amount payable to appellee in 12 months from date, which note contained the following provision:

"If the holder of this note at any time deems the Maker or any endorser, the debt or the security for the debt, if any, unsafe or insecure then upon the happening of any of said contingencies it may declare the unpaid balance due and payable without notice to any party."

On August 12, 1957, appellants deposited an additional sum of $2,500, in their savings account, making a balance of $6,500 in said account. On September 23, 1957, appellant Fred Baldwin borrowed an additional $2,500 from appellee, executing a note in that amount payable to appellee in six months from that date, which note contained the identical provision above quoted from the July 27, 1957, note.

On July 17, 1957, appellants executed a chattel mortgage instrument to Roy Ramsey Radio Shop payable in monthly installments. This instrument contained the following provision:

"If you or your assigns deem yourself insecure for any reason or if the undersigned fails to make any of said monthly installments particularly as above specified all remaining installments may be declared immediately due and payable."

On September 10, 1957, appellants executed a conditional sales contract instrument which contained the following provision:

"If the Purchaser defaults in the payment of any of the aforesaid installments or the interest due thereon, then the owner may declare the entire sum remaining unpaid hereunder to be immediately due and payable."

The last two above described written instruments were assigned to appellee bank and appellants when notified of such assignments authorized appellee bank to deduct the monthly installments payments from their personal deposit account with appellee bank.

On December 31, 1957, an interest credit of $62.50 was credited to appellants' savings account. On January 2, 1958, appellants withdrew the sum of $500 from their savings account, leaving a balance of $6,062.50 in this account which remained at that total until the date of offset by appellee.

On February 6, 1958, appellants were delinquent in the payment of the monthly installments on the Roy Ramsey instrument and the Specialty Sales instrument, which indebtedness had been assigned to appellee bank (and other things had occurred causing the bank to feel insecure as hereinafter related), and on said date appellee bank wrote a letter to appellants advising them to the effect that the bank felt insecure on the bank's notes and the Ramsey note and that the appellants were delinquent in the payment of the monthly installments on the Ramsey and Specialty Sales notes, with there then being unpaid balances due on all four notes as follows: $2,567.36, $2,545.88, $731.15 and $230.62, aggregating $6,075.01, and that appellee bank had offset appellants' three deposit accounts in the amount of $6,070.78 in payment of these notes, with appellants still owing the bank the sum of $4.23. The three deposit accounts of appellants at that time and the amount in each were as follows: Savings account $6,062.50; Baldwin Pharmacy account 87¢; and Mr. and Mrs. Fred Baldwin account $7.41, aggregating $6,070.78.

Appellee bank offered evidence that the Roy Ramsey and Specialty Sales notes were delinquent which evidence was not controverted by appellants.

Appellee bank offered evidence that it felt insecure as to the bank notes and the Ramsey note on the date of the offset. See affidavit of Wilton J. Daniel, President of appellee bank. We quote from said affidavit in part as follows:

"As President of Defendant Bank it was called to my attention the latter part of January, 1958, that Plaintiff, Fred Baldwin, had been arrested and was confined in the Smith County jail, charged with having sold narcotics in violation of law. I further determined that his place of business was closed and his Attorney called on Defendant Bank to release certain funds on deposit to Fred Baldwin in order that he might get Mr. Baldwin out of jail. His Attorney advised us that he was out of funds except for those in our Bank. After this conference I, with the Bank's Attorneys, checked the Notes of Fred Baldwin against the amount on deposit and determined that Mr. Baldwin did not have enough funds on hand to pay his current indebtedness to the Bank, which in my opinion placed him in an insolvent condition, coupled with his arrest and the closing of his business. This, in my opinion, placed the Bank in an insecure position so that all of his Notes matured.

\*     \*     \*     \*     \*     \*

"Fred Baldwin also had a note dated July 17, 1957, with the Roy Ramsey Radio Shop, which had been assigned to the Defendant Bank for a valuable consideration. This Note called for payments of $36.21 per month. A payment was due on January 16, 1958 which was paid on January 28, 1958, by check which was turned down for insufficient funds on January 29, 1958. Said Note contained a provision that 'If you or your assigns deem yourself insecure for any reason or if the undersigned fails to make any of said monthly installment payments as above specified, all remaining installments may be declared immediately due and payable.' Under this provision and because of said delinquencies and my determination that our Bank was insecure I declared this Note due and payable and offset the then balance of $731.15.

\*     \*     \*     \*     \*     \*

" \* \* \* At the time all of the notes were declared due and payable under the provision above quoted, there was on deposit to Fred Baldwin in a Savings Account $6,062.50. There was on deposit to Fred Baldwin d/b/a Baldwin Pharmacy $.87 and to Mr. and Mrs. Fred Baldwin $7.41, for a total deposit of $6,070.78. On the day of the offset Fred Baldwin actually owed The Peo-

ples National Bank $6,074.01, leaving a balance due us of $4.23, which remains due and unpaid."

Appellant Olivia Baldwin by affidavit denied that the Baldwin Pharmacy was closed on February 6, 1958. Appellants by their pleadings admitted execution of the Roy Ramsey and Specialty Sales instruments, referring to the Ramsey instrument as a chattel mortgage and the Specialty Sales instrument as a conditional sales contract; however, by affidavit they denied executing any "notes" with reference thereto. We think it is immaterial as to what these instruments are called as they contained obligations to pay the installments of indebtedness stated therein and the Baldwins were obligated to pay such indebtedness.

Also appellants did not deny by affidavit the following portion of the affidavit of Wilton J. Daniel: " * * * his Attorney called on Defendant Bank to release certain funds on deposit to Fred Baldwin in order that he might get Mr. Baldwin out of jail. His Attorney advised us that he was out of funds except for those in our Bank. * * *"

It was undisputed that Fred Baldwin was in jail charged with a violation of the Narcotics Act at the time the bank matured such notes. It was also undisputed that Fred Baldwin's stock of goods in his drug store was destroyed by water damage in January, 1958. It was undisputed that a $36.21 monthly payment on the Ramsey note was due on January 16, 1958, and was attempted to be paid by appellants by check on January 28, 1958, which was turned down for insufficient funds on January 29, 1958. It was also undisputed that on February 6, 1958, the balance on deposit in the Baldwin Pharmacy account was $.87 and the balance in the personal account of Mr. and Mrs. Fred Baldwin was $7.41, and a balance of $6,062.50 in their savings account, making a total of deposits of $6,070.78. It was also undisputed that on the date of offset Fred Baldwin owed appellee bank $6,075.01, being $4.23 more than he had on deposit in his accounts.

Appellants contend that the trial court erred in failing to hold that appellee had no legal right to accelerate the maturity of the two $2,500 notes and collect on them by offset of appellants' deposits.

A general statement of the law pertaining to offsets by banks is set out in 6 Tex.Jur., Banks, Sec. 100. We quote from same in part as follows:

"Consequent on its being a mere debtor in respect of a general deposit, the bank has an undoubted right to appropriate the deposit to or towards the liquidation of a debt due by the depositor to it. If the indebtedness arises on a past due note, the bank is authorized by law to resort to the depositor's account; and, where the depositor is insolvent, even a debt that has not matured may be satisfied out of the deposit upon the equitable ground that, otherwise, the debt could not be collected. * * *"

In this connection see the following cases: First Nat. Bank of Schulenburg v. Winkler, Tex.Civ.App., 146 S.W.2d 201, affirmed 139 Tex. 131, 161 S.W.2d 1053; Harper v. First State Bank of Grand Prairie, Tex.Civ.App., 3 S.W.2d 552; Stockyards Nat. Bank v. Presnall, 109 Tex. 32, 194 S.W. 384.

The above cited Texas authorities clearly recognize the *legal* right of a bank to offset past due notes against a depositor's general account as well as the *equitable* right of a bank to offset unmatured notes against a depositor's general account where the depositor is insolvent. We have found no Texas case passing on the validity or construction of contractual provisions similar to the provisions above quoted in the two $2,500 notes and in the Ramsey note, relating to "insecurity" and the right of a bank thereunder to mature indebtedness when it in good faith felt insecure based upon justifiable factual grounds and to off-

set such indebtedness against a depositor's general account. However, appellee cites a well-reasoned New York case, Updike v. Manufacturers' Trust Co., 243 App.Div. 15, 275 N.Y.S. 716; 267 N.Y. 528, 196 N.E. 563, certiorari denied 296 U.S. 648, 56 S.Ct. 308, 80 L.Ed. 461; Petition of Keyser, Inc., 98 N.H. 198, 96 A.2d 551, 37 A.L.R.2d 845, the reasoning of which we think would support the right of appellee bank, under the contractual provisions above quoted, to mature the three notes above referred to, by its good faith feeling of "insecurity" based upon justifiable factual grounds, and to offset said three notes against the appellants' deposit accounts. In Updike v. Manufacturers' Trust Co., supra, it was held that a trust company on notice of a material change in a depositor's financial condition was entitled to accelerate the maturity of a depositor's unmatured note and set off said note against the depositor's deposit under contractual provisions of the loan agreement between the parties.

It is our opinion that the above quoted provision contained in each of the two $2,500 notes payable to appellee bank as well as the above quoted provision in the Ramsey note were valid contractual provisions and that appellee bank by virtue of said contractual provisions under sufficient undisputed material facts in this case was authorized to accelerate the maturity of said notes and offset the same against appellants' deposits in appellee bank. (It is true that it was disputed as to whether Fred Baldwin's drug store was closed or not on February 6, 1958, but we hold that there were enough other material undisputed facts to justify the bank in its feeling of insecurity.) As we view these contractual provisions the matter of determining whether it felt insecure was primarily a matter addressed to the good faith determination of appellee bank. We think it is clearly undisputed that appellee bank felt "insecure" on the notes in question and that this determination of the bank was a good faith determination based upon sufficient material undisputed facts which would justify a prudent bank under such contractual provisions to make the offset that it did make against appellants' deposit accounts. As we view the situation the bank, under sufficient material undisputed facts recited above (and under the contractual provisions above referred to), was not compelled to wait until appellants withdrew all of their money or until they became unquestionably legally insolvent before the bank could act. In other words, under the contractual provision above referred to, where the bank in good faith felt insecure, based upon enough justifiable factual grounds as shown here, it could act as it did and save its debt and would not have to wait for unquestioned legal insolvency and thereby most likely lose its debt.

█ We also hold that under sufficient undisputed material facts in this case, where it was undisputed that the Ramsey and Specialty Sales notes were delinquent, that the trial court did not err in holding that the bank had a right to accelerate the maturity of these notes and offset same against appellants' deposit accounts. (Also as heretofore held, the bank was authorized to accelerate the maturity of and to offset the Ramsey note against appellants' deposit accounts by virtue of the contractual provision in the Ramsey note with reference to "insecurity" above referred to.)

Appellants in this connection have raised the question of presentment for the first time in their brief on appeal as their evidence at the hearing raised no such question, which contention we think comes too late now. However, such contention, even if timely raised, we think would be without merit under the undisputed material facts in this case. In this connection see the following authorities: Article 5937, Sec. 70, Vernon's Ann.Civ.St.; 6 Tex.Jur., Bills & Notes, Secs. 130 and 131, pp. 759, 60, 61. Also see In re Wilkins' Will, 131 Misc. 188, 226 N.Y.S. 415, wherein it was held that a bank could set off a debt against a depositor's account *without notice*. Appellant cites a number of cases dealing

with presentment; however, none of those cases deal with offsets by a bank of debts against a depositor's account, and are not applicable to the situation in the case at bar. We think under the facts in the case at bar the bank had a valid contractual right to mature the notes in question and having this right the offset was lawful and that presentment or notice was not required before making the offset.

It is our further opinion that since the maturing of the notes by appellee bank was lawful and that since the offset made by the appellee bank was lawful there would be no contractual or tort liability by said appellee bank to appellants and that portion of the appellants' suit was properly disposed of by the summary judgment of the trial court.

█ We further hold that the trial court did not err in failing to hold appellee bank liable for the alleged collection of usurious interest on the Ramsey and Specialty Sales notes since there was no pleading or proof that appellee knew such notes contained any usury and further because no proof of usury was made.

Appellee bank filed affidavits showing that it was an innocent purchaser for value of the installment notes in question and that to its knowledge such installment notes were not usurious on their faces and did not contain usury and that the bank had no intention to charge usury. The only evidence pertaining to usury was in appellant Fred Baldwin's affidavit where he swore a general conclusion that usurious interest was collected on the two installment notes but there was no showing made in the record that any of said notes were usurious on their faces, if in fact they did contain any usury. Appellants failed to introduce any evidence to the effect that the bank was not an innocent purchaser for value of such installment notes nor that the bank had any knowledge that such notes contained usury, if in fact they did contain usury.

Appellants in this cause seek recovery of a double usury penalty on the installment notes assigned to the bank under Article 5073, V.A.C.S. This they are not authorized to recover against appellee bank under the material undisputed facts in this cause. In this connection see the following authorities: Fires v. Kinney-Shotts Investment Co., Tex.Com.App., 59 S.W.2d 827, affirmed by Texas Supreme Court; Mossler Acceptance Co. v. Fields, Tex.Civ.App., 241 S.W.2d 255; Mossler Acceptance Co. v. Kieke, Tex.Civ.App., 244 S.W.2d 569.

In Fires v. Kinney-Shotts Investment Co., supra, it is stated:

*"It was essential, in order for plaintiff in error to recover the statutory penalty for usury against the assignee of the note, that he allege and prove knowledge or notice upon its part that the interest received and collected was usurious. McDaniel v. Orr, Tex.Com. App., 30 S.W.2d 849."* (Emphasis added.)

In Mossler Acceptance Co. v. Kieke, supra [244 S.W.2d 571], it is stated: .

"In the case at bar, it is, we think, obvious that appellee has wholly failed to produce evidence to establish that appellant had notice of the fact that usury was being charged either at the time it purchased the note or when it received payment of the interest thereon and that in receiving and accepting such sum it had intended to take and exact usurious interest, and that the evidence adduced in the trial court would support no more than a conjecture or surmise that appellant had notice that the interest received and collected was usurious.

"It follows that the judgment of the trial court must be reversed and judgment therein rendered in favor of appellant."

We have heretofore held that the provisions in the two $2,500 notes given by ap-

pellants to appellee bank (and in the Ramsey note as well) authorizing the bank to mature the notes when it felt insecure, were valid contractual provisions, and that under the undisputed material facts in this cause, the bank was acting in good faith and was authorized and legally justified based upon proper factual grounds, to feel insecure and was authorized and legally justified in maturing said notes and offsetting same against appellants' deposits accounts in appellee bank. We have also heretofore held that appellee bank was legally authorized to mature the delinquent Ramsey and Specialty Sales installment notes and by reason thereof was legally authorized to offset said notes against appellants' deposit accounts. In view of these holdings we deem it unnecessary to pass on appellants' contention that there was a fact question raised as to whether appellant was solvent or insolvent.

We hold that under the record in this cause the trial court correctly rendered a summary judgment in favor of appellee bank.

Appellants' motion for rehearing is overruled and the judgment of the trial court is affirmed.